THE STATE OF VERMONT *v.* PATRICK MAHON.

*Criminal Law.   Evidence.*

In criminal prosecutions, if the government introduce as evidence against the respondent, a statement of his in regard to his connection with the crime or the subject of the crime, the respondent is entitled to have the whole of such statement disclosed to the jury. The jury, however, are not bound to give equal credit to the whole statement, but it is for them to decide how much of it, under all the circumstances of the case, they will believe.

INFORMATION in three counts; two for horse stealing, and one for stealing a harness. Plea not guilty, and trial by jury, at the March Term, 1859,—BARRETT, J., presiding.

On the trial the government gave evidence tending to prove that the horse and harness in question were stolen at some time between ten o'clock of the night of the 24th of December, 1858, and the next morning at daylight, from the owner's stable in Northfield; that they were found with a sleigh attached, standing about sunrise on the morning of the 25th, under a shed in Marshfield village, about twenty-six miles from Northfield; that there were upon the horse an overcoat and a neck shawl, in place of a blanket; that there was a pair of buckskin gloves in the sleigh, but no buffalo robe; that that night and morning were exceedingly cold, the thermometer being at eighteen degrees below zero; that the respondent was at Northfield centre village in the evening of the 24th of December, some time before ten o'clock, and spoke for lodgings at the public house there for that night, and soon went out, saying to the landlord that he would be in soon, but did not return; that in the morning of the 25th, for about three miles on the road leading from Montpelier to Marshfield village, the respondent was seen by several persons going towards Marshfield village with the horse and sleigh aforesaid; that when the horse and sleigh were thus discovered standing under the shed, one of the witnesses went to the tavern of A. H. Davis, about fifteen rods from the shed, and there found the respondent sitting by the stove and two or three other persons in the room, and there made inquiry of those persons and of the respondent about the horse, whose it was and how it came there,

and that none of them knew, and the respondent said that he had no horse.

That afterwards, on further inquiry by the witness and others, the respondent said that he had slept in the barn at Putnam's tavern the night before, about two miles from Marshfield village, that he had left the barn that morning, and when about twenty rods from it, on his way to Marshfield village, a man overtook him with this horse and sleigh and asked him to ride, and he got in and rode till they arrived at this shed, when the man drove in and got out of the sleigh, and handed him his overcoat and told him to hitch the horse, and put the overcoat on it, and left, saying that he would be back in a short time; that he (respondent) waited a few minutes for his return, but being cold, and the man not returning, he went to the tavern, where he was found as aforesaid, and, as it turned out on examination, with his feet and lower part of his legs badly frozen,

On being inquired of about the overcoat and gloves, the respondent said they were not his. The evidence also tended to show that a paper of tobacco was found in the overcoat pocket, which, on being shown him, and on being asked whose it was, he said was his, and on inquiry how it came in that pocket, he said he didn't know, that he might have handed it to the man for a chew. The evidence also tended to show that on being taken to Putnam's tavern, and being requested to point out the place where he slept in the barn, and how he got in, he undertook to do so, but pointed out a place into which he could not have got, and where he could not have lodged in the manner stated by him.

On the cross examination of some of the witnesses introduced by the government, their testimony tended to show that the coat and gloves above mentioned were somewhat too large for the respondent.

The government also gave evidence tending to show that when the respondent was brought to jail from Marshfield, he wore this overcoat, that it was hung up in the jail, that after the respondent had been there awhile, the jailor discovered him in the act of tearing up and strewing about the jail some woolen garment, and thereupon asked the respondent what that meant, and what he

was doing, whereto the respondent replied that he was tearing up his old overcoat, that he had got through using it, and did not want anything more of it. The jailor testified that this was the same coat that the respondent wore when he was brought to jail as aforesaid.

The respondent introduced evidence tending to show that he was at Davis' tavern in Marshfield on Tuesday before the 25th of December, 1858, and then had not any overcoat with him, and that on the 25th of December he wore a pair of mittens.

The court charged the jury fully in respect to all the points in the case arising upon the law and evidence, to which no exception was taken, except as follows: In view of a point made by the counsel for the respondent in arguing the case to the jury, the court told the jury that the mere fact taken by itself, that the coat and gloves were too large for the respondent, did not of itself tend to prove that a man came with the respondent to the shed in the manner stated by him, that this fact was consistent with his story in this respect, and so would not operate to his prejudice.

The court also charged the jury that the government, having proved what the respondent said, as tending to show that he came to Marshfield with the stolen property, it was proper that all he said at the time in relation to the matter should be stated by the witnesses, but that the jury were not bound to regard it as all true ; that they would consider what he thus said in connection with the other evidence, as well as in its intrinsic credibility, and if they disbelieved any part of his story as proved by the witnesses, they would treat such part accordingly ; if they believed the whole story, it showed that he was honestly connected with the property ; if they disbelieved the account given by him of the manner in which he became connected with the property, that part of his story would not inure to his relief by way of rebutting the presumption arising from the stolen property being found in his possession.

The counsel for the respondent requested the court to charge the jury that if the government relied on the admission of the respondent, to prove the stolen property to be in his possession, they must take the whole story as true and be bound by it accord-

ingly. The court declined so to charge, and to the charge as given in the respects above specified, and to the refusal of the court to charge as requested, the respondent excepted.

*C. W. Willard* and *S. B. Colby*, for the respondent.

—————— ——, for the prosecution.

POLAND, J. The county court were clearly correct in charging the jury that they were not bound to give equal credit to all parts of the defendant's story in relation to his connection with the stolen property. The defendant had the right to have all that he said upon that subject at that time received and weighed by the jury as evidence, that which made the connection to be innocent and honest, as well as that which admitted any connection at all, and so the court told the jury. Mr. Greenleaf says in his treatise on Ev., Vol. 1, sec. 201, " But though the whole of what he said at the same time, and relating to the same subject, must be given in evidence, yet it does not follow that all parts of the statement are to be regarded as equally worthy of credit ; but it is for the jury to consider, under all the circumstances, how much of the whole statement they deem worthy of belief, including as well the facts asserted by the party in his own favor as those making against him." A very large number of cases are cited in a note to the same section, in support of the doctrine. It is a rule laid down by all writers on the law of evidence, and is one of the best settled and most familiar rules of evidence. The reason why an admission of a party against himself is received as evidence against him, is said to be the improbability that he would make it unless it. was true. This reason would not apply to such portions of an admission as makes in favor of the party, but still fairness requires that all the statement should be received as the party makes it, and with all the qualifications he sees fit to attach to it. But in considering the actual degree of credit to be given to the several parts of a statement or admission, the judgment could not fail to be influenced in many cases by the different influences and effect of the different parts of the statement upon the interests of the party, If parts of the statement, especially

those in favor of the party, be contradicted by other evidence, or are improbable or inconsistent, a jury might be authorized to dis-believe them, and still believe the residue of the statement.

The defendant's counsel assume that the court treated it as a conceded or undisputed fact that the defendant came to Marsh-field with the horse, and had the horse in his possession there, and cast the burden upon the defendant to rebut the legal inference arising from that fact. But we think the bill of exceptions will not properly admit of such a construction. The exceptions state that " the court charged the jury fully upon all points arising upon the law and evidence, to which no exception was taken except as follows." The exceptions then proceed to state the charge as to the effect of the defendant's admission, how. it was to be weighed, and the fact of the coat and gloves being too large for the defendant.

It is to be inferred from the exceptions that in this part of the charge not excepted to, the jury were fully and properly charged upon all the evidence in the case tending to show that the defend-ant came to Marshfield with the horse, or the contrary, and whether he came alone with the horse or whether another man took the horse there, and the defendant was merely a passenger and rode with him. This is apparent from the manner in which the Judge commences the charge, upon the effect of the defend-ant's admission. " That the government having proved what the respondent said as tending to show that he came to Marshfield with the stolen property, etc."

The only evidence in the case tending to prove that another person drove the horse there, and that the defendant merely rode with him a short distance, was the naked statement of the defendant himself, and very many of the facts stated go strongly to the conclusion that that part of his story was a mere fabrication, and, if it was, there would not seem to have been any ground to doubt that the defendant came there with the horse, and had the horse in his possession there.

What is said in the charge as to the result of finding the defendant's story about another man to be false, is to be consid-ered in reference to the jury's having already found that the defendant came there with the horse, and therefore alone. We do not see how any legal inference could be drawn from the size

of the coat and gloves found with the horse, that another man drove him there, or how any more effect could be given to that fact than the charge authorized. We are not able to discern why the case was not properly submitted to the jury upon the evidence. The respondent's exceptions are therefore overruled.