37   55
41   209
37   55
70   333

MARY SHANE, *by her next friend, C. M. Armstrong,* v. J. B. SMITH.

1. WORK—*No Pay; Presumption, Overcome by Promise.*   Where a girl came from another state at the request of her uncle to stay in his family and work for him, under a promise that she should be taught to play the organ and sent to school, and she came and performed not only the ordinary duties of the household, but other work in addition thereto for her uncle, the usual presumption that where a near relative is taken into the family of another no compensation was intended to be made for services by one to the other, beyond that

received during the time they were rendered, is overcome by such promise.

2. NIECE, *Treated as Servant; Evidence.* Where an uncle charged his niece for the time she was absent from her ordinary work, with articles of clothing furnished her, and with other items, it is some evidence that he regarded and treated her as a servant as contra-distinguished from a relative living in the family.

3. SERVICES; *Payment in Particular Way; Recovery.* Where one performed services for another, to be paid for in a particular way, upon refusal to pay in the manner agreed upon, the one performing such services is entitled to compensation in money for what such services are reasonably worth.

*Error from Graham District Court.*

ACTION brought before a justice of the peace by *Mary Shane* against *J. B. Smith,* to recover $207 for work done by plaintiff for defendant from March 1, 1884, to July 1, 1885. Trial, and judgment for plaintiff for $90. The defendant appealed. Trial by the court, at the November Term, 1885. The plaintiff introduced her evidence; the defendant offered no evidence; the court found for the defendant; new trial denied, and judgment accordingly. The plaintiff brings the case here.

The evidence introduced showed as follows: The defendant and his wife lived in Graham county. He sent a letter with $15 inclosed to the plaintiff, who is a niece of his wife, to pay her fare from Missouri, where she lived, to his home in Kansas. In that letter he promised that if she would come to Kansas, he would teach her to play the organ and send her to school. In March, 1884, being then about thirteen years of age, she went and stayed with the defendant until June, 1885, when she left because her aunt whipped her for keeping company with a young man who was objectionable to her aunt. She did not learn to play the organ, but in attempting to play at a certain time, she in some way injured the pedal, and afterward her aunt would not let her go near the organ. She did not go to school, although one was kept a mile and a quarter from the defendant's home. When she asked whether she might go to school, she was told that they were too busy

to have her go at that time. The plaintiff did the ordinary work of the house, and in addition thereto herded the defendant's cattle both in summer and in winter. The defendant, who carried the mail, was absent from home much of the time. He paid plaintiff no wages, nor had she asked for any. In one part of her testimony, plaintiff said she was used and treated as one of the family; and in another part, that she was treated as a hired girl. At one time she was offered $2 per week if she would work elsewhere. Plaintiff testified that she left not because she had not received wages, nor because she had not been sent to school, nor yet because she had not been taught to play the organ, but because she would not take a whipping from anyone.

In the trial before the justice, the defendant introduced a kind of memorandum, as he called it, not as a set-off or counter-claim, although it was filed with the justice, and on that paper was a statement of articles furnished by the defendant to the plaintiff, including clothes, shoes, and gloves; and she was also charged with the days during which she was absent from her work, and the weeks when she was sick; for medicines which the defendant had furnished her, and for chairs that she had broken by her carelessness, etc.

*H. J. Harwi*, for plaintiff in error.

*F. D. Turck*, for defendant in error.

Opinion by HOLT, C.: The evidence shows that plaintiff came from Missouri at the request of defendant, and performed the ordinary household work in defendant's family, and also herded his cattle at all seasons of the year, under the promise of being sent to school, and taught to play the organ. Defendant neither sent her to school nor taught her to play the organ, but failed in every way to fulfill his contract with her. Upon the failure of the defendant to pay in the particular way agreed upon, then the plaintiff is entitled to compensation in money upon refusal to pay in the way specified. (*Stone v. Stone*, 43 Vt. 180.) There was no time agreed upon that she should

work for defendant. When one is hired for an indefinite period, the party employed can leave at any time without giving any reason therefor. (*Kirk v. Hartman & Co.*, 63 Pa. St. 97.)

The defendant in error urges that because of the relation existing between plaintiff and defendant, and the fact that plaintiff was one of the defendant's family, she ought not to recover in this action. We believe that where a near relative is taken into the family and treated as a member thereof, there is a strong presumption created that no payment or compensation was intended to be made for services by one to the other, beyond that received during the time they were rendered; and it will take clear and satisfactory proof to remove the presumption that their relation was one of near relatives in the same family, rather than that of master and servant. (*Ayres v. Hull*, 5 Kas. 419; *Greenwell v. Greenwell*, 28 id. 413, 675; *Hall v. Finch*, 29 Wis. 278; *Williams v. Hutchinson*, 3 N. Y. 319.) The nearer the relation, the stronger the presumption that they regard themselves and are to be treated as members of the same family, and not as master and servant. On the other hand, the more distant the relation the weaker the presumption that they are to be treated as members of the same family. In the case of *Ayres v. Hull*, cited and relied upon by defendant, the relation of brother and sister existed; very much stronger than that of uncle and niece by marriage, as in this case. In recognizing the ordinary rule, the court says in that case:

"So many considerations, other than those of a mere pecuniary character, enter into the minds of persons closely related in making up the family, that it would be both violent and dangerous to infer a promise from the kindly and sociable acts growing out of such relations."

But the court also says in the same opinion:

"There is not one word of testimony tending in the slightest degree to show either an express promise to pay, or a specific contract, or that there was any understanding that the decedent was to pay for the services rendered, or that the relation of debtor and creditor was growing up between the parties."

In this case there was a distinct promise to pay, not in money,

but payment that would have been of as much value, at least to a girl just growing into young womanhood. Some of the evidence tends to show that she was required to do and did do more than the ordinary labor of a well-ordered household. The paper which defendant filed with the justice of the peace before whom this cause was first tried, whether an account kept against plaintiff, or a simple memorandum, as he claimed it to be, plainly shows from the items therein contained that at one time he regarded her as his hired servant. He charged her for clothing, medicines, doctors' bills, lost time, and furniture she carelessly destroyed. There was testimony showing the value of plaintiff's services sufficient to authorize a judgment in her favor. The plaintiff was only thirteen years old when she began to work for defendant; and it may be when the evidence of defendant is offered in another trial of the case, the cause of action established by the evidence of plaintiff may be fully met and overborne; but under the testimony brought here, the court erred in rendering judgment for the defendant.

It is recommended that the judgment of the court below be reversed.

By the Court: It is so ordered.

All the Justices concurring.