CINCINNATI, S. & C. R. Co. *v.* BENSLEY.

*(Circuit Court of Appeals, Sixth Circuit.    September 1, 1892.)*

No. 28.

1. CONTRACTS—INTERPRETATION—BREACH OF CONDITIONS.
    It being proposed to purchase a certain site for a board of trade building in Chicago, subscriptions for that purpose were sought from the owners of neighboring property, on the theory that the value thereof would be largely increased by the erection of such a building.    Defendants agreed to pay a certain sum in consideration of the proposal to sell the site, and of the probable increase in value of the neighboring estates, "and the further consideration that the said board of trade shall erect and complete said proposed building and occupy the same for its regular sessions within two years from January 1, 1881."    *Held*, that the latter condition went to the whole promise, and on a breach thereof no suit could be maintained on the contract.

2. SAME—QUANTUM MERUIT.
    Defendant was not liable under the common counts on a *quantum meruit*, for the benefit accruing to it was incidental only, and its liability was determined by the contract alone.

In Error to the Circuit Court of the United States for the Northern District of Ohio.

Action by John R. Bensley against the Cincinnati, Sandusky & Cleveland Railroad Company.    Verdict and judgment for plaintiff.    Defendant brings error.    Reversed.

Statement by BROWN, Circuit Justice.

This was an action to recover the amount of a certain subscription made by the defendant railroad company towards the purchase of a lot

of land in Chicago, upon which the board of trade of that city proposed to erect a building for the transaction of its business. The facts of the case were substantially as follows:

In July, 1880, the board of trade being desirous of purchasing a new location and erecting a building, the plaintiff, Bensley, opened negotiations with the heirs of John F. Tracy for the purchase of a part of a block of vacant ground 395 feet long by 205 feet wide, through the middle of which La Salle street extended. The entire block was worth from $150,000 to $175,000; the north 240 feet, the proposed purchase, being worth from $110,000 to $115,000. For the purpose of reducing the amount which the board of trade would have to pay, one Parker was employed to solicit subscriptions from the owners of neighboring property, which, it was supposed, would be largely increased in value by the new location of the board of trade. The defendant railroad company, being interested in a block of ground 50 feet wide near the Tracy land, and worth about $40,000, the title to which had been acquired and was held for it by John S. Farlow, its president, executed the following contract:

"BOSTON, December 10, 1880.

"Whereas, it is proposed by the executors and heirs of the estate of John F. Tracy, late of the city of Erie, in the state of Pennsylvania, to make a sale to the board of trade of the city of Chicago, in the state of Illinois, of a lot or parcel of land in the city of Chicago, bounded on north on Jackson street 208 feet, east on Pacific avenue 215 feet, south by Van Buren street 208 feet, west by Sherman street 215 feet, on which said lot or parcel of land the said board of trade are to erect a suitable building for the transaction of the regular business of said board of trade, and to remove thereto; and whereas, the erection of said proposed building and its occupation by said said board of trade is likely to increase the value of the near-by estates on Clark street: Now, therefore, in consideration of the premises, and the further consideration that the said board of trade shall erect and complete said proposed building and occupy the same for its regular business within two years from January 1, 1881, we, the undersigned, owners in fee or in trust of estates on said Clark street, hereby agree each to pay to said executor or heirs the sum of five thousand dollars in cash when said proposed building is completed and occupied by said board of trade, as provided in this agreement.

"CINCINNATI, SANDUSKY & CLEVELAND RAILROAD CO.,
"By J. S. FARLOW, Its President."

The subscription paper as originally prepared by Parker was an unconditional one, providing for payment of one half when the contract should be made for the sale of the land, and the residue when the building was completed and occupied; but this Farlow refused to sign. In January, 1881, Parker wrote to Farlow asking for $1,000 more, sending back the original subscription, with a request to make it payable, one half when contract of sale was made by the Tracy heirs to the board of trade, and the residue, with interest, when the building was completed, and also requesting a change in the provision as to the time when the building should be completed. To this Farlow replied, saying that he thought $1,000 more would be subscribed, but no change should be made in the terms of the subscription, and again, in February, wrote, raising the

subscription to $6,000; as directed by his board of directors, but making no alteration in the terms and conditions of the original subscription. On February 18th, however, he wrote him again, consenting to make his payment conditional upon the board completing and occupying its building within two years from the time of obtaining title to the land, which was being delayed by proceedings necessary to be taken to vacate La Salle street. On June 18, 1881, the Tracy heirs conveyed to plaintiff the land purchased for the use of the board of trade, and also assigned to him the subscriptions made by the neighboring property owners, including that of the defendant. Owing to a delay occasioned by an injunction against the vacating of La Salle street, the construction of the building was postponed until April, 1882, when new plans were adopted for a granite building, costing $1,740,000, in lieu of a two-story brick building to cost $500,000, as originally contemplated. The building was not completed and occupied by the board of trade until April 29, 1885. On July 27, 1881, defendant sold its lot for $75,000, or $35,000 more than its estimated value in 1880.

The case was submitted to the jury upon this state of facts, and a verdict rendered in favor of the plaintiff for the full amount claimed, with interest, viz., $8,370, for which judgment was duly entered. To reverse this judgment this writ of error was sued out. The case was argued before Mr. Justice BROWN and Circuit Judge TAFT.

*Bowman & Bowman*, for plaintiff in error.

*Hessenmueller & Bemis* and *D. Cadwell*, for defendant in error.

BROWN, Circuit Justice, (*after stating the facts.*) There are two questions involved in this case: (1) Whether an action will lie upon the express contract of the defendant company to contribute to the purchase price of the lot. (2) Whether, in case such action will not lie, the circumstances raise an implied obligation on the part of the defendant to make a contribution proportioned to the benefit received by it from the location of the board of trade upon such lot. There was a further question raised and passed upon by the circuit court as to the power of the defendant to bind itself to make this subscription, but, in the view we have taken of the other questions, we do not find it necessary to consider this.

1. We find no difficulty in holding that the action, so far as it is based upon the express promise set forth in the instrument of December 10, 1880, and the subsequent modifications thereof, cannot be maintained. This was a promise to pay the Tracy heirs the sum of $5,000, subsequently raised to $6,000, upon the completion and occupation of the board of trade building, provided this take place within two years from January 1, 1881, subsequently changed to two years from the time the board of trade should obtain title to the lot. This was the express condition upon which the subscription was made, and, such condition not having been performed, the action will not lie upon the promise. Without going into the niceties of the law with regard to dependent and independent covenants, no one who understands the force of language can

fail to conclude that the defendant intended only to be bound in case the building were completed and occupied within the time specified. The language of the covenant is too clear to admit of any doubt:

"Now, therefore, in consideration of the premises, [viz., the proposition of the Tracy heirs to sell the lot, and the probable increase in the value of the neighboring estates,] and the further consideration that the said board of trade shall erect and complete said proposed building and occupy the same for its regular business within two years from January 1, 1881, we, the undersigned, owners in fee or in trust of estates on said Clark street, hereby agree," etc.

The intention to be bound only upon the performance of this condition is the more manifest from the fact that the directors of the defendant company refused to sign the unconditional subscription inclosed by Parker in his letter of December 10, 1880, and the subsequent correspondence indicates its willingness to raise the amount to $6,000, and to make it payable two years from the time the board of trade should obtain title to the lot, provided "there shall be no unnecessary delay in obtaining the title." Indeed, the whole tenor of the correspondence, as well as the contract itself, exhibits the unwillingness of the defendant to make its subscription unconditional as to time. It is sufficient to say that the condition evidently goes to the whole promise, and that the promise falls with the failure to comply with such condition.

If any authority were needed in support of so plain a proposition, it would be found in the cases of *Bank* v. *Hagner*, 1 Pet. 455, and in *Dermott* v. *Jones*, 23 How. 231. The first was an action against the defendant upon a special agreement to purchase of the plaintiff certain land in the city of Washington. A time was fixed for the performance of the contract and the payment of the consideration money. It was held that in contracts of this description the undertakings of the respective parties are to be considered dependent, unless a contrary intention clearly appears; that if either a vendor or vendee wishes to compel the other to fulfill his contract, he must make his part of the agreement precedent, and cannot proceed against the other without an actual performance of the agreement on his part, or a tender and refusal. It was said by the court that the time fixed for performance is, at law, deemed of the essence of the contract; that, no part of the consideration having been paid on the day named, the defendant had a right to abandon his contract; and that the tender of a deed 16 months thereafter was not sufficient to charge the defendant with the payment of the money. In *Dermott* v. *Jones*, Id. 220, the action was upon a special contract to build a house by a certain day, which was not fulfilled; and it was held to have been erroneous in the court to instruct the jury to find for the plaintiff, as the work was not finished by the appointed day, though it was completed after the time, with the knowledge and approbation of the defendant; that by the terms of the contract the performance of the work was a condition precedent to the payment of the money sued for; that, the special contract not having been performed by the day named, no action would lie upon it; and the case was remanded to the circuit court

to be tried upon the common counts for work and labor done and materials furnished. So in the case of *Waterman* v. *Banks*, 144 U. S. 394, 12 Sup. Ct. Rep. 646, the defendant, by written contract, agreed that "at any time within twelve months from this date, upon demand" of the plaintiff's assignee, he would execute a deed of an interest in a certain mine; and it was held that this conveyed to the plaintiff's assignor no present interest in the property, but only the right to acquire such an interest within a period of 12 months from the date of the contract; that time was of the essence of such a contract; and that a demand made after the expiration of 12 months was of no avail as foundation for the suit. See, also, *Slater* v. *Emerson*, 19 How. 224.

The same construction was placed by the supreme court of Illinois in the case of *Ogden* v. *Kirby*, 79 Ill. 555, upon a subscription to aid in the construction of a railroad when the road should be completed and in operation to a certain place by a certain time. So in *Railroad Co.* v. *Boestler*, 15 Iowa, 555, it was held that a condition in a contract to aid the construction of a railroad by a subscription, that the road should be put under contract by a certain time, was a condition precedent to the right of the company to recover on the contract, and that a completion of the road by the time stipulated in the contract, without the letting of the contract stipulated in the condition precedent, was not a sufficient compliance to enable the company to recover.

There are doubtless cases in equity where a contract has been made to purchase real estate and to pay for the same within a certain time, and the vendee has entered into possession, which hold that time is not to be considered as of the essence of the contract, and that the vendee shall not be ousted, or his contract forfeited, by reason of his failure to pay upon the day named; but these cases have no application to an action at law where the plaintiff has failed to perform a condition precedent.

2. The more important and difficult question remains to be considered, viz., whether the facts in this case raise an implied obligation on the part of the defendant to pay for the benefit received by the construction of the building, irrespective of the written contract.

Every action upon a contract must rest upon the foundation of a promise, express or implied. If the promise be express, and be subject to a condition, it can only be enforced if the condition has been fulfilled. But if, from the performance of some act by the defendant, the plaintiff has received and accepted a benefit to which he would not otherwise have been entitled, he is as much bound in equity to pay for it as if he had expressly promised to do so beforehand. This the law calls an implied promise or obligation. Thus, if a man build a house upon the land of another, with his assent, the law raises an obligation on his part to pay its value, since he has been benefited to that extent, and, if he did not intend to pay, it was his duty to forbid its construction, or at least to give notice that he would not be chargeable. So, if he had expressly contracted to pay for the house, provided it were built in a certain manner and within a certain time, and he accepted it, though it be not built in the manner or within the time limited, he is bound to pay

its value, not exceeding the contract price, less any damages he may have suffered by reason of the failure of the other party to comply with the exact conditions of his contract. *Vanderbilt* v. *Iron Works*, 25 Wend. 665; *Ladue* v. *Seymour*, 24 Wend. 60; *Jewell* v. *Schroeppel*, 4 Cow. 564. In other words, the contract is looked to to determine the time and manner in which it is to be performed, and also to limit the amount of the recovery; but the promise upon which the plaintiff recovers is not the express promise of the contract, since that was not performed, but the implied obligation arising from the acceptance of the benefit. We know of no case in which it has been held that the contract can be looked to for the promise, since the promise must be taken with its accompanying condition.

Upon the other hand, if a house be built upon the lot of a neighbor, the defendant is under no obligation to pay, though his lot be thereby quadrupled in value, since this increase of value was an incidental benefit, to which he was entitled. If the law were otherwise, every man who built a house might assess his neighbors with the increased value thereby given to their property. As a matter of fact, however, it is not unusual for neighboring property owners to agree to contribute to a valuable improvement with a view to the enhancement of their own property, as was done in this case. But such agreement is *stricti juris*, and the obligation of the promisor is akin to that of a guarantor who receives no personal benefit from the performance of the act for which he agrees to become responsible; at least, none to which he would not have been entitled if the promise had not been made. In such case the contract cannot be looked to to raise a promise to pay. That must result from the circumstances of the case. So if A. promises to pay B. for a house to be built upon the land of C., provided it be built within a certain time, and the house be not completed within the time named, it is difficult to see how A. could be held liable in any form of action, since he has received no benefit from the subsequent performance of the contract. In such case, however, if C. should accept the house, he would undoubtedly be bound to pay its value; but if he failed to do so, the builder would have no recourse but to remove the house from the land. It was his own folly to have made so stringent a contract. This illustration is practically covered by the case of *Slater* v. *Emerson*, 19 How. 224, in which the defendant promised to give a railway contractor his note for certain work to be done for the railway, provided the work were completed by a certain day; and it was held that, as the work was not finished within the stipulated time, there could be no recovery. The rule, as we understand it, was stated by Sir JAMES MANSFIELD in *Cooke* v. *Munstone*, 1 Bos. & P. (N. R.) 355, as follows:

"Where a party declares on a special contract, seeking to recover thereon, but fails in his right so to do altogether, he may recover on a general count, if the case be such that, supposing there had been no special contract, he might still have recovered for money paid or for work and labor done."

The cases upon this point are not numerous, but we think they are conclusive. In the case of *Munro* v. *Butt*, 8 El. & Bl. 738, the action

was upon a contract to complete certain specified work on a certain day, and to be done to the satisfaction of a surveyor named, upon whose approval payment was to be made. The work was not done by the day named, and there was no evidence of any certificate by the surveyor, or any other expression that he was satisfied. It was held that the plaintiff could not recover upon the special contract, because it had not been performed, and that there was no such evidence of an acceptance of the house by the owner as to make him chargeable with its value. It was said in this case that the mere fact of the defendant taking possession of his own land on which buildings had been erected, or repairs or alterations to buildings had been made, did not afford an inference that he had dispensed with the conditions of the special agreement under which the work was done, or of a contract to pay for the work actually done, according to measure and value. A like ruling was made upon a similar contract in *Smith* v. *Brady*, 17 N. Y. 173. In *Appleby* v. *Myers*, L. R. 2 C. P. 651, the plaintiffs contracted to erect certain machinery on the defendant's premises at specified prices for a particular portion, and to keep it in repair for two years, the price to be paid upon the completion of the whole. After some portions of the work had been finished and others were in the course of completion, the premises, with all the machinery and materials, were destroyed by an accidental fire. It was held that the plaintiffs were not entitled to sue in respect of those portions of the work which had been completed, whether the materials used had become the property of the defendant or not. The ruling was, in substance, that the fire put an end to the contract, and that both parties were excused from its further performance. The English law upon the subject is summed up in a note to the leading case of *Cutter* v. *Powell*, 2 Smith, Lead. Cas. 25, as follows:

"But no claim in the nature of a *quantum meruit* can be founded upon a special contract which has not been performed, unless the person who has the right to insist upon the performance of the special contract has accepted some benefit resulting from its partial performance, or the circumstances are such as to show in some other way that a new contract has arisen between the parties."

The rule in this country is the same. Thus, in *Faxon* v. *Mansfield*, 2 Mass. 147, it was held that, where the defendant undertook to erect and finish a barn by a day named, and afterwards left the work unfinished without the consent and contrary to the wishes of the owner, who was obliged to procure other workmen at his own expense to complete the same, he was entitled to recover nothing. The same rule was applied in *Olmstead* v. *Beale*, 19 Pick. 528, to a case where the plaintiff agreed to work for the defendant for a definite period, 'and voluntarily left the defendant's service without his consent before the expiration of the term. The most satisfactory case, however, is that of *Railway Co.* v. *Thompson*, 24 Kan. 170. This was an action upon certain bonds issued by the city of Parsons in aid of the construction of the plaintiff's road, and subject to a condition that the plaintiff should "have its road constructed and in operation * * * on or before the 1st day of July, 1878."

It was held that time was of the essence of this contract, and that the failure of the plaintiff to complete the road by the day named was fatal to a recovery, notwithstanding that the road was completed shortly after that, and the city received the benefit of it.    In delivering the opinion of the court, Mr. Justice BREWER, now of the supreme court of the United States, observed:

"Nor is this a case of part performance by one party and the acceptance by the other of the proceeds of such performance.    The work done by the company was upon its own grounds.    It owns the road absolutely and entirely.    It has parted with nothing which the city has received.    The city has accepted and appropriated none of its labor and none of its materials.    It has received the benefit of the work in no other sense than every individual in the community, and in no other way than that of one person benefited from his neighbor's improvement of his own property.    It does not at all parallel the case of a party contracting to build for another a house upon the latter's land by a certain day, and only partially doing the work by that day. The partially built house belongs to the latter.    He appropriates the labor and the materials of the former.    But here the company has parted with nothing, and the city has taken and owns nothing, and in such case the condition must be performed, or the contract does not bind the city.    Nothing excuses such nonperformance.    Both parties stand released."

The language of this opinion is plainly applicable to the case under consideration.    Had the defendant received a benefit from the performance of this contract to which he would not have been entitled had the contract not been made, the result might have been different; but, as a matter of fact, it received no benefit from the erection of this building which did not accrue to other owners of neighboring property who did not sign the contract or subscribe in aid of the purchase of the lot, and as to such persons it would not be claimed that a liability arises.    Its acquiescence in the completion of the building is immaterial, since it had no right to interfere.    It is then only upon the basis of the special contract to pay that an action will lie, and, this contract not having been performed by the plaintiff, there can be no recovery.

There is a class of cases much relied upon by the plaintiff, wherein the courts have sustained actions by members of a family against the head of the family for services performed which the law presumed to have been gratuitous, and have allowed the contract to be given in evidence to rebut such presumption.    In these cases, however, the contract was fully performed by the plaintiff, and the only difficulty that lay in the way was in the enforcement of the promise as made by the defendant, and it was held that the plaintiff could recover for his labor.    Thus, in *Stone* v. *Stone*, 43 Vt. 180, the plaintiff and defendant entered into a parol agreement by which the plaintiff was to work for the defendant on his farm, and the defendant was to deed the plaintiff one half the farm. It was held that, though the promise to give the deed was within the statute of frauds, an action would lie upon the common counts for the labor, upon the ground that the plaintiff had performed his contract, and it had inured to the benefit of the defendant.    So in *McGarvy* v. *Roods*, 73 Iowa, 363, 35 N. W. Rep. 488, it was held that no recovery

could be had by a daughter against her mother's administrator for the maintenance of her mother, who was aged and infirm for some years prior to her death, in the absence of an express promise on the part of the mother to pay for such maintenance; but that where there were such facts and circumstances as would satisfy the jury that the services were rendered in the expectation on the part of the mother of paying compensation, an express promise was not necessary. There was a promise to pay for similar services in *Ellis* v. *Cary*, 74 Wis. 176, 42 N. W. Rep. 252, but the promise to pay was within the statute of frauds as to a portion of it, and it was held that, as the services had been performed under a promise to pay, the court would enforce the promise as one to pay in money. The promise was held to be operative, not as a contract, but to rebut the presumption that the plaintiff rendered the services in question gratuitously. See, also, *Wallace* v. *Long*, 105 Ind. 522, 5 N. E. Rep. 666; *Shane* v. *Smith*, 37 Kan. 55, 14 Pac. Rep. 477.

It is obvious, however, that these cases have no application where the plaintiff has failed to perform the contract on his part, and the defendant has received no benefit from its subsequent performance to which it would not have been otherwise entitled.

The facts shown in this case—that the defendant sold its property within a few months after the contract was signed, and very shortly after it became known that the board of trade had purchased of the Tracy heirs for a sum very largely in excess of its previous value, (an enhancement of price undoubtedly due to the proposed relocation of the board of trade building)—are such as to appeal strongly to the generosity of the defendant; but, if any obligation be thereby created, it is not one which a court of law can enforce. The defendant is entitled to stand upon the letter of its contract, and we are of opinion the action cannot be maintained.

The verdict and judgment of the court below must therefore be set aside, and the case remanded for further proceedings in conformity with this opinion.