J. A. POWERS AND M. A. POWERS v. I. J. RUDE AND THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY.

(Filed September 3, 1904.)

1. **DEED—Takes Effect, When.** A deed takes effect only from the time of its delivery; and where there is no delivery of a deed by the grantor, either in escrow or to the grantee, no title whatever passes thereby.

2. **SAME—Escrow, Delivery of, When Valid.** Delivery of an escrow, to be valid, must be with the consent of the grantor. If its delivery is made to depend upon the performance of certain conditions, his consent is withheld until such performance.

3. **SAME—Escrow, Performance of Conditions.** When a deed is delivered merely as an escrow, to be delivered upon the performance of certain conditions, it is, until such performance, a mere scroll; and if the grantee obtains possession of the deed before the performance of the conditions he acquires no title thereby.

4. **CONTRACTS, OF SUBSCRIPTION—Binding, When.** To make a subscription or donation contract binding, it must be accepted

as any other promise or offer; and if this is not done within the time specified, the subscription or donation is a mere offer and cannot be enforced.

5.  SAME—Conditions Precedent.  Where the terms of a subscription or donation contract stipulate that an express acceptance is required, such acceptance is a condition precedent to the validity of such contract.

6.  SAME—Time of the Essence of, When.  Where no time is expressed, within which the condition must be performed, the rule is that performance must be within a reasonable time.  But where it is expressly stipulated in the subscription or donation contract that performance must be within a given time, then time is of the essence of the contract, and there must be a compliance within the time specified, or no recovery can be had upon such contract.

7.  CONTRACTS—FOR CONVEYANCE OF LAND—Certainty—Specific Performance.  A contract for the conveyance of land, which a court of equity will specifically enforce, must be certain in its terms, and such certainty applies to both the description of the property and the estate to be conveyed; and where the property cannot be identified as the property described in the contract, specific performance will be denied.

8.  SAME—Parol Evidence, Admissibility of.  Where a sufficient description is given in a contract to convey land, parol evidence may be resorted to in order to fit the description to the thing; but where there is an insufficient description, or where there is no description, such evidence is inadmissible.

9.  SAME—Parol Evidence, Inadmissible, When.  A court of equity will never receive parol evidence to both describe the land, and then to apply the description.

(Syllabus by the Court.)

*Error from the District Court of Greer County; before Jno. H. Burford, Trial Judge.*

*Shartel, Keaton & Wells* and *B. B. Blakeney,* for plaintiffs in error.

*Blake, Blake & Beeks, M. A. Low, Garrett & Garett* and *Chas. M. Thacker,* for defendants in error.

STATEMENT OF FACTS.

This action was commenced in the district court of

Greer county, to cancel a deed purporting to have been executed and delivered by J. A. Powers to I. J. Rude, as trustee, conveying forty acres of land, the said I. J. Rude having subsequently conveyed a portion of said land to the Chicago, Rock Island & Pacific Railway Company. The material averments in the petition are as follows. That the plaintiffs are husband and wife, and are the legal and equitable owners of the real estate in controversy, to wit: The northwest quarter of the northeast quarter of section twenty-seven, township five north, range twenty-two west of the Indian Meridian. That on the 29th day of March, 1900, the plaintiff J. A. Powers signed and executed an instrument of writing, purporting to be a deed, to the defendant I. J. Rude, as trustee, for said tract of land. That although said purported deed was never delivered by the plaintiff J. A. Powers to the said I. J. Rude, or to any other person or persons for the said Rude, the said Rude, without the knowledge or consent of said plaintiff, obtained possession of said deed, and filed the same for record in the office of the register of deeds of said Greer county at 9 o'clock A. M., on the 28th day of June, 1900. That said purported deed is invalid as against the rights of the plaintiffs, for the following reasons: (1) That there was no delivery of said deed. (2) That said deed is void on its face. (3) Said tract of land was the homestead of the plaintiffs, and the deed was only signed and acknowledged by the plaintiff J. A. Powers, and therefore said deed is void. (4) That there was no valuable or legal consideration paid for the execution of said instrument.

It was further alleged that on the 4th day of July, 1900, said I. J. Rude executed and delivered to said Chicago, Rock

Island & Pacific Railway Company a warranty deed for a strip three hundred feet wide off of the north side of said above described tract of land; but that said railroad company, prior to said date, through and by its proper officers, had full knowledge of the rights, interests and claims of the plaintiffs to said real estate, and accepted said conveyance from the said I. J. Rude, knowing of the invalidity of said purported deed from said J. A. Powers to said I. J. Rude, and of the rights and claims of the plaintiffs, and each of them, to the tract of land described in said conveyance from the said Rude to the said railway company. A copy of each of said deeds is attached to the amended petition, and made a part thereof.

To this amended petition, the Chicago, Rock Island & Pacific Railway Company filed the following answer:

"Comes now the Chicago, Rock Island & Pacific Railway Company herein sued as 'The Chicago & Rock Island Railway Company,' and for its answer to the amended petition herein filed,

"First. Denies every material allegation in plaintiff's petition not hereinafter expressly or by implication admitted.

"Second. Said defendant further answering says, that it is a corporation organized and existing under and by virtue of the laws of the States of Illinois and Iowa, and that on May 2, 1900, it had constructed and was operating a line of railway from Chickasha, Indian Territory, to Mountain View, Oklahoma Territory, and that at said time certain parties who were interested in the growth and development of the town of Mangum, in the county of Greer, in said Territory, proposed to the said railway company that if the said company would within eighteen (18) months from May 2, 1900, construct and put in operation an extension of the said line of railway from Mountain View, Oklahoma

Territory, to said town of Mangum, and locate and build a depot on said line within one mile from the center of the public square of the said town, and cause said line to be surveyed to be located, and the lands for depot and shipping pens to be designated within four (4) months from said date, and accept said proposition within sixty days from said date they would cause to be conveyed to said defendant suitable depot grounds not to exceed ten (10) acres to be selected by it on either of the following tracts of land, to wit: The northwest quarter of the northeast quarter of section numbered twenty-seven (27) in township numbered five (5), north of range numbered twenty-two (22) west of the Indian Meridian; the northwest quarter of said section numbered twenty-seven (27), except a ten (10) acre block in the southeast corner thereof, and the southeast quarter of section numbered twenty-two (22) in township numbered five (5), north of range numbered twenty-two (22) west, and would also cause to be conveyed to the said company certain other lands, and secure certain advantages to said defendant in the way of right of way, roadway for driving animals, and facilities for the transaction of its business.

"That said defendant did within the time specified in the said proposition accept the said proposition, and did fully comply with all of the terms thereof, and locate and construct its said line of railway in accordance with the terms of the said proposal, and did in pursuance with the terms of said contract select as depot grounds the strip of land described in exhibit "B" to said plaintiff's amended petition, all of which was done by the said defendant in good faith, and in full reliance upon, and in consideration of the said proposition so made to it by said citizens.

"Said defendant further states, that the said plaintiff J. A. Powers, was, at the time of the making of the said proposition the owner of the said northwest quarter of the northeast quarter of said section numbered twenty-seven (27) and signed the said proposition which was in writing, and

caused the same to be so made to the said defendant; that the said plaintiff, J. A. Powers, having so submitted the said proposition to this defendant, and in order to insure reliance upon the said proposition and action in accordance therewith by this defendant, and for the purpose of inducing the other signers to the said proposition to make the same, and inducing this defendant to accept the said proposition and act thereon, executed and delivered to the grantee named therein the deed of conveyance set out in his amended petition, and designated as "Exhibit A," and that the said plaintiffs each with full knowledge of the acceptance of the said proposition by this defendant, and the making of the said conveyance as aforesaid, and of this defendant's reliance upon the said proposition and conveyance permitted said defendant to comply with the said proposition so made to it, and the terms of its acceptance thereof, and to expend large sums of money in the location and construction of said line of railway, and the building and equipment of said line of railway located upon the lands described in said "Exhibit B."

"That in accordance with the terms of the said contract between said citizens and this defendant, I. J. Rude, as trustee, and in accordance with the terms of the trust, in good faith, executed said conveyance set forth in plaintiffs' amended petition as "Exhibit B" which was in good faith, and for good and sufficient consideration accepted by said defendant, and the said plaintiffs after the said conveyance had been so executed, and with full knowledge of the execution thereof accepted and retained all of the benefits accruing therefrom and acquiesced therein until the commencement of this action.

"Wherefore, This defendant says that said plaintiffs are estopped from questioning the validity and sufficiency of their said conveyances in writing described in their amended petition.

"Third. Said defendant further says, that it is, and

was at the commencement of this action in the peaceable and undisturbed possession of the said premises described in "Exhibit B" to the plaintiffs' amended petition, and that the claim of the plaintiffs to the said premises is a cloud upon this defendant's title thereto.

"Wherefore, Said defendant asks that its title to the said tract of land described in said "Exhibit B" to plaintiffs amended petition, and more particularly described as follows, to wit: ....................be quieted, and that said plaintiffs and all persons claiming for, through, by, under, or from them, or either of them be perpetually enjoined from setting up, or asserting any right, title or interest in or to the said premises adverse to the right and title of this defendant; that this defendant have judgment against the said plaintiffs for the costs of this action, and all other proper relief."

The defendant I. J. Rude also filed a separate answer, denying all of the material allegations contained in the petiton not expressly admitted, and setting up substantially the same defense as the railway company. To each of these separate answers the plaintiffs filed a reply, containing a general denial of all new matter pleaded in the respective answers. Upon the issues thus joined, the cause was tried to the court, without a jury, and judgment was rendered against the plaintiffs, and in favor of the defendants for costs of the action. Motion for a new trial was duly filed by the plaintiffs, and, upon consideration thereof, was by the court overruled, and an exception reserved, and the plaintiffs bring the case here on appeal.

Opinion of the court by

HAINER, J.: The main question involved in this case is, whether there was a delivery of the deed to the land in

dispute, under which the defendants claim title. It appears from the record that on March 28, 1900, a number of citizens of the town of Mangum, among them J. A. Powers, submitted a proposition to the Chicago, Rock Island & Pacific Railway Company, to donate certain moneys and property to said company, provided it would extend its line of railroad to said town. On March 29, 1900, a contract of subscription was prepared and circulated among the citizens of said town. This contract of subscription was signed by the plaintiff J. A. Powers and a number of other subscribers, Powers agreeing to donate forty acres of land. This contract, among other things, contained the following express provision:

"It is expressly understood and agreed that the subscribers hereto shall at once deposit their respective notes for the amount of their respective subscriptions and their respective warranty deeds to the lands hereinafter described in the Cattlemen's Exchange Bank of Mangum, Greer county, Oklahoma, to be held by said bank until the Chicago & Rock Island Ry. Co., shall have accepted or rejected said proposition, at which time, if said proposition is accepted the same shall be forthwith delivered to the said I. J. Rude et al., or if not accepted, the same shall be forthwith redelivered to the respective makers thereof, and in no event shall the said notes or deeds be of force and effect against their respective makers until delivered in accordance with the terms of this subscription to the said I. J. Rude et al."

Pursuant to this contract, on March 29, 1900, J. A. Powers executed a deed to the land in controversy to I. J. Rude, as trustee, and acknowledged the same before Jarrett Todd, a notary public, and in the presence of one J. C. Gilliland. It appears from the record that the notary did

not have his seal in his possession at the time of taking
the acknowledgment, and he retained the instrument for the
purpose of placing his seal thereon. There is no testimony
in the record to prove, or tending to prove, that the deed
was delivered to the notary for any other purpose than to
attach his seal thereto. Nor is there any evidence to show
that the notary was made the agent of Powers to deliver
the deed. The evidence is wholly silent as to what the no-
tary should do with the deed after he had affixed his seal
to the same. However, the evidence discloses that the no-
tary retained the instrument in his possession until some
time in the early part of June, when he turned the same
over to J. C. Gilliland, without the authority, knowledge or
permission of Powers, and after Powers had demanded the
deed from said notary, Todd, and while Todd still had the
same in his possession. And this was also subsequent to
the rejection of the proposition by the railway company, pur-
suant to which proposition the deed was made. It is ad-
mitted by the railway company that the proposition which
was made on March 28, 1900, was rejected by the com-
pany on April 20, 1900.

The first proposition having been rejected by the rail-
way company, a second proposition was submitted on May
2, 1900. This subscription contract contained the following
provisions:

"We will each pay to said committee the sums of money
set opposite of our respective names and specified in our
several notes now on deposit in the Cattlemen's Exchange
Bank, of said town, and will convey to them the lands de-
scribed in our several deeds now held in escrow by said bank,

provided such proposition must be accepted or such contract must be made before September 1, 1900."

This contract was signed by J. A. Powers, and immediately after his signature appeared the words "40 acres." The undisputed testimony further shows that the deed that Powers executed to Rude on March 29, 1900, was not deposited in the Cattlemen's Exchange Bank until the early part of June, long after the first proposition had been rejected, and after Powers had demanded the deed from Todd, the notary, who had it in his possession at that time; and that said deed was so deposited in the bank at said time without Powers' authority, knowledge or consent.

It appears that on June 29, 1900, the railway company accepted the proposition of May 2, 1900, subject to certain conditions and modifications. It is admitted by the defendants that on June 28, 1900, one day prior to the acceptance by the railway company of the proposition of May 2, 1900, Rude procured the deed from the Cattlemen's Exchange Bank, without the authority, knowledge or consent of Powers, and had the same recorded in the office of the register of deeds of Greer county, Oklahoma.

In our opinion, the evidence wholly fails to show that the deed was ever delivered by Powers to Rude, or to any other person for him. And no title could pass until there was a delivery of the deed. It is true that the deed provided that it should be deposited in the Cattlemen's Exchange Bank, to be delivered when the railway company agreed to establish a depot within one mile of the public square of the town of Mangum. But, in our opinion, the evidence does not prove, or tend to prove that there was a delivery of

the deed from Powers to the Cattlemen's Exchange Bank, in escrow, or to the defendant Rude; and there is no evidence to show, or tending to show, that Powers·ever authorized any one to deliver the deed to the bank, in escrow, or to any other person.   Nor is there any evidence to show that Powers ever authorized either Todd, the notary, or Gilliland to deposit said deed in the bank.   On the contrary, the evidence discloses that Powers turned the deed over to Todd, the notary, for the purpose of having the seal attached thereto.

But even if the deed had been deposited in the bank, in escrow, it expressly provided that it should be delivered to the railway company when the company agreed .to establish a depot within one mile of the public square of said town of Mangum.   It is a well settled principle of law that when a deed is delivered as an escrow, to take effect upon the performance of some condition by the grantee in the future, no title passes until the condition has been fully performed, and the grantee can acquire no title by obtaining possession of the deed, even by the voluntary act of the depositary, until the condition has been performed.

In the case of *County of Calhoun et al. v. American Emigrant Company,* 93 U. S. 124, it was declared that:

"A deed takes effect only from the time of delivery, and, when deposited as an escrow, 'nothing passes by it unless the condition is performed."

In *Everts v. Agnes,* 4 Wis. 343, 65 Am. Dec. 314, it was held that:

"Escrow, to be delivered upon performance of certain conditions, is, until their performance, a mere scroll.   If the grantee obtains possession of the escrow without the performance of the conditions, he acquires no title thereby."

And it was further held in this case that:

"Delivery of escrow, to be valid, must be with assent of grantor. If its delivery is made to depend upon the performance of certain conditions, his consent is withheld until such performance.

"Recording of escrow does not make it a deed, so as to protect purchaser from the grantee upon faith of his mere record of title, where such escrow had never been validly delivered to such grantee."

In *Daggett v. Daggett,* 143 Mass. 516, 10 N. E. 311, the supreme judicial court of Massachusetts, in discussing this question, uses the following language:

"When a deed is delivered merely as an escrow, to take effect upon the performance of some condition by the grantee in the future, no title passes until the condition has been performed. The transaction is incomplete. It is not the grantor's deed until the second delivery. Even if the grantee obtains possession of it before the condition has been performed, yet it is not the grantor's deed, and he may avoid it by pleading *non est factum.* The grantee cannot acquire the title by gaining possession of the deed by theft, by fraud, or by the voluntary act of the depositary, but only by performance of the condition. The depositary has no authority to waive such performance, and an unauthorized delivery by him of the deed which he holds in escrow is entirely ineffectual to pass the title."

In *Smith v. Royalton Bank,* 32 Vt. 241, 76 Am. Dec. 179, it was held that:

"Deed delivered in escrow, to be delivered to the grantee after the performance of some other act, will not be valid for any purpose until the condition upon which it was to be delivered to the grantee has been performed; and the fact that the deed has since come into the hands of an innocent purchaser for value will not change the rule."

In this case, Mr. Justice Bennett, in the course of the opinion, says:

"In the case of an escrow, the estate does not pass, but remains in the grantor until the condition has been performed and the deed delivered over, and if the deed be delivered over without a performance of the condition, it cannot be an operative delivery to pass the estate. In this case Rolfe was the special agent of the grantors to hold the bond and mortgage till the condition was performed, and no presumption can arise of his having a general agency, if that should be thought to be of any importance. The deed not having been delivered, it was a nullity and void, or, more properly speaking, never existed, and must be tainted with the fraud of Rolfe, which goes to the very existence of the instruments, into whatsoever hands they may come. It is not like the cases where the fraud is collateral, as where the instrument has become a perfect one, and is appropriated fraudulently to a use different from the one for which it was created."

In *Taft v. Taft*, 26 N. W. 426, the supreme court of Michigan held that:

"Until delivery by the depositary in escrow, in conformity with the conditions of the holding, no title whatever passes to the grantee."

In *Jackson v. Lynn*, 62 N. W. 704, the supreme court of Iowa held that:

"A deed delivered in escrow that is fraudulently abstracted from the depositary by the grantee without performing the conditions on which it was to be delivered to him is void even in the hands of a *bona fide* purchaser of the land."

In *Eichlor v. Holroyd*, 15 Ill. App. 658, it was held that the grantor of a deed delivered in escrow may recover it by action, or have it removed as a cloud upon his title,

if delivered before the performance of the conditions upon which it was delivered.

Applying these authorities to the case at bar, it follows that even if the deed was deposited in escrow, in accordance with the intent of the parties, to be delivered upon the acceptance by the railway company of the proposition to build a depot within one mile of the public square of the town of Mangum, the procurement of the deed by Rude, the grantee, and by the voluntary act of the Cattlemen's Exchange Bank, the depositary, before the acceptance of the proposition and the compliance with its terms and conditions, rendered the deed ineffectual, and conveyed no title whatever to the grantee.

The first subscription contract having been rejected, whatever rights the defendants in error may have depend upon the validity of the second contract of subscription. Is this a valid and binding contract? To make a subscription, as in this case, binding, it must be accepted as any other promise or offer; and if this is not done within a reasonable time, the subscription is a mere offer, and cannot be enforced, and where the terms of the subscription stipulate that an express acceptance is required, within a stated time, such acceptance is a condition precedent to the validity of the contract. (*Galt's Executor v. Swain,* 9 Grat. [Va.] 633, 60 Am. Dec. 311; *Wiswell v. Bresnahan,* 84 Me. 397, 24 Atl. 885; *Utica & S. R. R. Co. v. Brinkerhoff,* 21 Wend. [N. Y.] 139, 34 Am. Dec. 220.)

In *Wiswell v. Bresnahan, supra,* the supreme court of Maine, in discussing this question, said:

"No contract is completed until each party has accepted every proposition of the other without modification or the ad-

dition of new matter. There must be a clear accession on both sides to one and the same set of terms. (Chit. Cont. 15-21; Metc. Cont. 18; 1 Pars. Cont. 476; *Jenness v. Iron Co.* 53 Me. 20; *Railroad Co. v. Unity,* 62 Me. 153.) The result of the authorities is all embraced in the simple principle that only when the wills of the parties so unite in the same thing as to exactly coincide does the law recognize a contract. Bish. Cont. sec. 334."

And where it is expressly stipulated, as in this case, that acceptance and performance must be within a given time, then time is of the essence of the contract, and there must be a compliance within the time and in the manner specified, in order to recover upon the contract, or to enforce specific performance of the same. (*M. K. & C. Ry. Co. v. Thompson,* 24 Kan. 170; *Cincinnati S. & C. R. Co. v. Bensley,* 51 Fed. 738; *Phillips v. Seymour,* 91 U. S. 650; *Jones v. U. S.,* 96 U. S. 24.)

The case of *Railway Company v. Thompson, supra,* was an action upon certain bonds issued by the city of Parsons, Kansas, in aid of the construction of plaintiff's road, and subject to the condition that plaintiff should have its road constructed and in operation on or before the first day of July, 1878. It was held that time was of the essence of this contract, and that the failure of the plaintiff to complete the road by the day named was fatal to recovery, notwithstanding the fact that the road was completed a short time thereafter, and the city received the benefit of the construction of the road. In delivering the opinion, Mr. Justice Brewer, now one of the Justices of the supreme court of the United States, said:

"Nor is this a case of part performance by one party

and the acceptance by the other of the proceeds of such performance. The work done by the company was upon its own grounds. It owns the road absolutely and entirely. It has parted with nothing which the city has received. The city has accepted and appropriated none of its labor and none of its materials. It has received the benefit of the work in no other sense than every individual in the community, and in no other way than that of one person receiving benefit from his neighbor's improvement of his own property. It does not parallel at all the case of a party contracting to build for another a house upon the latter's land, by a certain day, and only partially doing the work by that day. The partially built house belongs to the latter. He appropriates the labor and materials of the former. But here the company has parted with nothing and the city has taken and owns nothing. And in such a case the condition must be performed or the contract does not bind the city. Nothing excuses such non-performance. Both parties stand released."

The same doctrine was approved by the United States circuit court of appeals, sixth circuit, in Cincinnati, S. & C. R. Co. v. Bensley, supra, in an able opinion by Justice Brown, now one of the Justices of the supreme court of the United States, where he observed:

"There are doubtless cases in equity where a contract has been made to purchase real estate and to pay for the same within a certain time, and the vendee has entered into possession, which hold that time is not to be considered as of the essence of the contract, and that the vendee shall not be ousted or his contract forfeited, by reason of his failure to pay upon the day named; but these cases have no application to an action at law where the plaintiff has failed to perform a condition precedent."

And in commenting upon the manner in which such

contracts are construed, Justice Brown uses the following language:

"But such agreement is *stricti juris,* and the obligation of the promissor is akin to that of a guarantor who receives no personal benefit from the performance of the act for which he agrees to become responsible; at least, none to which he would not have been entitled if the promise had not been made."

Judge Story, in his excellent work on Contracts, section 32, lays down the rule that the condition precedent must be strictly performed in every particular, in order to entitle the party whose duty it is to perform it to enforce the contract against the other party.

And it was similarly held by the supreme court of Illinois in the case of *Ogden v. Kirby,* 79 Ill. 555, upon a subscription contract to aid in the construction of a railroad, when the railroad should be completed and in operation to a certain place by a cetrain time.

And in *Railroad Company v. Boestler,* 15 Iowa 555, it was held that the condition in the contract to aid in the construction of the railroad by subscription, that the railroads should be put under contract by a certain time, was a condition precedent to the right of the company to recover on the contract; and that the completion of the road by the time stipulated in the contract, without the letting of the contract stipulated in the condition precedent, was not a sufficient compliance to enable the company to recover.

But the second subscription by Powers was clearly within the statute of frauds, and therefore void. *Ferguson v. Blackwell,* 8 Okla. 489; *McCormick v. Bonfils,* 9 Okla. 605. This contract of subscription of the land was not described,

and it did not sufficiently disclose on its face, or by reference to any other instrument, the land that was to be conveyed.

In *Ferguson v. Blackwell, supra,* the court said:

"Where a sufficient descripton is given in the contract, parol evidence may be resorted to in order to fit the description to the thing, but where an insufficent description is given, or where there is no description, such evidence is inadmissible; but the court will never receive parol evidence both to describe the land, and then to apply the description."

It is true, the second description stated that the subscribers agreed to convey to the committee the land described in their several deeds then held in escrow by the Cattlemen's Exchange Bank; but the undisputed testimony shows that at that time the Powers deed was not on deposit in the Cattlemen's Exchange Bank, either in escrow or any other manner, but was in the possession of Todd, the notary.

It further appears that on July 4, 1900, Rude deeded ten acres of said tract of land to the railway company, the railway company at the time having knowledge, through its officers and agents, of the claims of Powers, and of the fact that he was objecting to any conveyance or transfer of the property to the company. And on July 30, 1900, this action was instituted by the plaintiffs to cancel the trust deed, and to remove the cloud from their title. The railway company having knowledge and notice of the rights, interests and claims of Powers, before the transfer of the land from Rude to the company, and prior to the time that possession was taken thereof, it cannot even be regarded and treated as a *bona fide* purchaser for value without notice.

We therefore hold that the evidence, when taken in its most favorable light in favor of the defendants, is wholly

insufficient to sustain the judgment of the district court. For the reasons herein stated, the judgment of the district court of Greer county is reversed, and the cause remanded with directions to grant a new trial.

Burford, C. J., who presided in the court below, not sitting; all the other Justices concurring.