BENJAMIN F. FERRIS *v*. HENRY P. IRVING, ADMINIS-
TRATOR OF THE ESTATE OF JOSEPH K. IRVING, DECEASED,
WILLIAM McKENZIE, AND AMBROSE S. HURL-
BURT *et als.*

| 28 | 645 |
| 78 | 208 |

ACTION TO DETERMINE ADVERSE CLAIM TO LAND.—An action cannot be maintained to quiet a legal title to land vested in the plaintiff, unless the plaintiff is in possession of the property in dispute at the commencement of the action.

ENFORCEMENT OF CONTRACT OF INTESTATE TO CONVEY LAND.—An administrator will not be compelled to perform specifically a contract of the intestate to convey land, unless it is found as a fact that the intestate had contracted to convey the particular land described in the complaint. An agreement of the intestate to convey a parcel of his land, when he owned several parcels, without describing any particular tract, will not be enforced.

DEATH OF PRINCIPAL IN POWER OF ATTORNEY.—The death of the principal operates as a revocation of a power of attorney to convey land, and if, after the death of the principal, the attorney in fact makes a deed under the power, the deed is void, even if the attorney is ignorant of the death.

APPEAL from the District Court, Twelfth Judicial District, Alameda County.

Defendants recovered judgment in the Court below, and plaintiff appealed.

The other facts are stated in the opinion of the Court.

*Sharp & Lloyd,* for Appellant.

The act of Fair, done in ignorance of the death of his principal, was good, and we refer the Court to *Cassaday* v. *McKenzie,* 4 Watts and Sergt. 282, which contains a full, learned, and logical discussion of the question, both upon reason and principle. Indeed, no stronger authority in favor of the soundness of our position can be cited than *Smout* v. *Ilberry,* 10 Mees. and Wels. 1, in which it is held that the agent is not liable, where he acts in good faith, without knowledge of the decease of the principal, and according to which authority neither Fair nor his estate is bound to us; we are to be the victims; we protest. We say that the old technical rule of the common law was that the power ceased with the death of the principal. The rule was the same in the civil law, but there we find the exception stated: "The acts of the agent

done *bona fide* in ignorance of the death of his principal were held valid and binding on the heirs of the latter." (Story on Agency, Sec. 491.) The same rule has been adopted as the rule of commercial law in Continental Europe. (Ib. pp. 1–9.)

*Samuel J. Clarke, Jr.*, and *William H. Glascock*, for Respondents.

The plaintiff's counsel relies much upon the fact that the death of J. K. Irving was not known either to Fair or Valdez at the time of the execution of the deed and release. This case, as well as the authorities referred to therein, make no such exception in favor of an act of an agent done *bona fide and in ignorance* of the *fact of the revocation* by the death of the principal. On the contrary, this very case of *Travers v. Crane*, contains a citation from Judge Kent, expressly repudiating any such position. Judge Kent remarks: "By the civil law and the law of those countries that have adopted the civil law, the act of an agent done *bona fide* after the death of the principal and before notice of his death, is binding upon his representatives.

"But this equitable principle does not prevail in the English law, and the death of the principal is an instantaneous and absolute revocation of the authority of the agent unless the power be coupled with an interest."

Upon this point the authorities are overwhelming. We contend, then, that at the instant of the death of J. K. Irving the title to these lots descended to his heirs; and that the title could not be divested by the act of an agent, whose authority had ceased to exist.

By the Court, SHAFTER, J.

The complaint in this action is framed with a double aspect: first, as a bill filed under the two hundred and fifty-fourth section of the Practice Act to quiet a legal title already vested in the plaintiff; and second, as a proceeding to compel the specific performance of a contract to convey. The action is

not maintainable under the first aspect, for there is no allegation that the plaintiff was in possession of any of the lots in controversy at the time the suit was instituted; nor can it be maintained under its second aspect, for it does not appear by the findings that any contract to convey the particular lots named in the complaint was ever made by J. K. Irving with Valdez, the plaintiff's assignor.

Should the complaint be considered as having a third aspect, viz: that of a bill *quia timet* to clear off a cloud upon title, still the action cannot stand, for the reason that the plaintiff has no title, legal or equitable, to be clouded or endangered.

It appears by the findings that on the 17th of August, 1853, Joseph K. Irving, then in life, was seized of the lots in controversy, together with a large number of other lots, in the City of Oakland, and a tract lying outside of said city known as a part of the Peralta Rancho; and that he on that day, for a good and valuable consideration, executed and delivered to José M. Valdez a certain instrument in writing, whereby he agreed to convey to said Valdez fifty acres of said ranch, outside of said city, to be located where said Valdez should think proper. It further appears that the parties, thereafter in the early part of 1854, entered into a parol agreement to exchange the fifty acres mentioned in said written contract for " some city lots in the City of Oakland." On the 16th of May, 1854, Irving executed a power of attorney to one William D. Fair, and before departing from the State he introduced Valdez to his said attorney and told him to make the exchange which Valdez and he had agreed upon. A few days thereafter Irving left for the East, and died in the City of New York on the 28th of June, 1854. Two days thereafter Fair, as attorney in fact of Irving, executed a deed of conveyance to Valdez of the lots in controversy, and the latter released Irving from his covenant to convey the outside lands. The defendants Hurlburt and McKenzie claim the city lots in dispute under an administrator's sale and deed.

First—The deed executed by Fair as attorney in fact of J. K. Irving is not the deed of Irving, nor can it be treated as

a contract by him to convey the city lots named in it. Irving was dead at the time the deed was executed, and his death operated as a revocation of the power of attorney to Fair. The correctness of the doctrine that the death of the principal revokes the authority of the agent is disputed by the counsel of the appellant, but in view of the decision in *Travers* v. *Crane,* 15 Cal. 12, we do not consider its correctness to be an open question in this State.

Second—Nor is it found that Irving before he left for the East agreed in person to exchange the city lots in controversy for the outside lands; on the contrary, it is found, in effect, that he did not so agree.

The finding is that Irving agreed to exchange "some of the city lots," etc. But he owned a large number of city lots, and nothing was said as to how many Valdez was to receive, nor was any clue given to their location nor to their value, except as it may be inferred that they were to be equivalent in that particular to the value of Valdez's existing rights in the outside lands. A contract, in legal contemplation, is an agreement between two or more parties for the doing or not doing of some specified thing. Whatever else may have been specified in the parol agreement in question, it is apparent that a conveyance of the lots named in the complaint was not. Valdez called on Irving on the eve of his departure and proposed, in the most general form, an exchange of country for city property ; and Irving assented to the overture in language as general as that in which it was made. To that extent there was undoubtedly a meeting of minds. Irving introduced Valdez to Fair, and told Fair to " make the exchange which he, Irving, and Valdez had agreed upon." But they had agreed upon nothing except as above stated. The clear result of all this is, that at the date of Irving's death he was, at the most, bound only by an agreement to make an agreement which, when made, would bind him to convey two or more of his city lots; and they might turn out to be the lots now in question ; but it is just as true that they might not.

Under this view of the matter, it becomes unimportant to

consider the questions made by the counsel respectively, bearing upon the defense of the Statute of Frauds, or any of the other points which have been argued.

Judgment affirmed.

SAWYER, J., concurring specially.

I concur on the second ground stated and discussed in the opinion.

In the other aspect presented by the complaint, the action, in my opinion, is not one of the new class of cases of which the Court is authorized to take cognizance under section two hundred fifty-four of the Practice Act; and it was not necessary for the plaintiff to aver that he was in possession to enable him to maintain the action, had his own title been otherwise sufficient to entitle him to have defendant's conveyances annulled as a cloud on his title. In this particular the principle announced in *Hagar* v. *Shindler*, decided at the present term, applies. The action in this aspect of the case is aimed at a particular conveyance from the same source of title, subsequent in time, and claimed to be a cloud upon the plaintiff's title. Such an action could have been maintained without the aid of section two hundred fifty-four, and the jurisdiction of the Court does not depend upon its provisions, or upon the possession of the complaining party at the time of the institution of the suit.