## JAMES A. FERGUSON v. A. J. BLACKWELL *et ux.*

(Filed Aug. 24, 1899.)

1. CONTRACT—*Conveyance of Lands—Specific Performance.* A contract for the conveyance of lands, which a court of equity will specifically enforce, must be certain in its terms, and that certainty required has reference to both the description of the property and the estate to be conveyed; and, accordingly, wherever the property cannot be identified as the property described in the contract, specific performance will be denied.

2. ACTION ON CONTRACT—*Evidence.* Where a sufficient description is given in the contract parol evidence may be resorted to in order to fit the description to the thing, but where an insufficient description is given, or where there is no description, such evidence is

inadmissible; but the court will never receive parol evidence both to describe the land, and then to apply the description.

3. CONTRACT—*Terms Construed.* Under the terms of the contract sued upon in this case, which provides for a "bill of sale," which shall apply to "one-half of all profits made in the handling of cattle, or any other business that I may engage in," and under the circumstances in this case, this application should be restricted to such operations as Blackwell might have engaged in, in the Ind an Territory, and to apply to only such profits as were made at the time of the handling of cattle, or any other business which Blackwell should engage in by the use of $5,000 then borrowed from a bank at Coffeyville, and which furnish the occasion for the contract. His subsequent removal to Oklahoma some years afterwards, could not have been in contemplation at the time of the execution of the agreement, and his subsequent acquistions of property are not subject thereto.

4. UNCONSCIONABLE CONTRACT—*Rule Applied.* The doctrine declared by the supreme court of the United States is that: "The difference between that degree of unfairness which will induce a court of equity to interfere actively by setting aside a contract, and that which will induce a court to withhold its aid, is well settled. It is said that the plaintiff must come into court with clean hands, and that a defendant may resist a bill for specific performance by showing that under the circumstances the plaintiff is not entitled to the relief he asks. If the contract is unconscientious or unreasonable, or there has been any unfairness, the court will refuse its aid,"—and that: " If to any unfairness a great inequality between the price and value be added, a court of chancery will not afford its aid." These remarks are applicable to the circumstances of this case, and to the relief sought for here.

(Syllabus by the Court.)

*Error from the District Court of Kay County; before*
*B. T. Hainer, District Judge.*

*George A. Grace* and *M. J. Holt*, for plaintiff in error.

*Tetirick & Rose*, for defendants in error.

Action by James A. Ferguson against A. J. Blackwell and Rosa Blackwell for specific performance. Judgment for defendants, and plaintiff brings error. Affirmed.

## STATEMENT OF THE CASE.

The petition, filed January 7, 1898, set forth a contract executed by A. J. Blackwell, and delivered by him to the plaintiff, which is as follows:

"VINITA, I. T., January 6, 1891.

"This agreement, made and entered into by and be tween James A. Ferguson, of the first part, and A. J. Blackwell, of the second part, witnesseth; that in consideration that Reed & Ferguson has indorsed for the said Blackwell to the First National Bank of Coffeyville for the sum of five thousand dollars, and other considerations, the said A. J. Blackwell agrees to bill of sale to the said James A. Ferguson one-half of all realty and personal property, after my liabilities are paid, including all my landed interest in the Territory, and to one-half of all profits made from the handling of cattle, or any other business that I may engage in. * * It is understood and agreed that the said A. J. Blackwell will execute and carry out this agreement and contract at any time the said Ferguson may desire, and it is agreed that the said Ferguson may substitute any person he may choose as his representative, and use any other person's name, by their consent, to represent himself with said Blackwell.

"A. J. BLACKWELL.

"Witness: E. N. RATCLIFFE."

This contract was delivered by Blackwell to Ferguson at Vinita, in the Indian Territory, on January 6, 1891. The petition avers that, after executing it, Blackwell made large sums of money in his business as a cattle dealer, and in buying and selling real estate, and became possessed of large landed interests in the Indian Territory and in the Territory of Oklahoma, of which he is now the owner, subject to the plaintiff's right, and that with the profits of which business he bought "a large

number of lots and blocks in the town of Blackwell, in this Territory;" that afterwards the defendant Blackwell made a voluntary conveyance to his wife, the defendant, Rosa Blackwell, of all the said property in Blackwell, with the fraudulent intent to cheat, hinder, and delay his creditors, and especially the plaintiff in the enforcement of his rights under the contract. The plaintiff asked for an accounting and decree for payment, and for specific performance, and for the execution of a deed to the plaintiff of one-half interest in the lands, lots, and blocks in Blackwell, which he claimed the contract provided for.

The defendant A. J. Blackwell demurred to the petition as not stating facts sufficient to constitute a cause of action, which demurrer was overruled. His answer set out a general denial, and, among other things, that the contract was intended only as a security or conditional sale of the property therein referred to, and pleaded the statute of limitations of five years. An amendment to the answer also set up that the plaintiff had recovered a judgment of $2,777.50 against the defendant A. J. Blackwell on October 4, 1895; that the matter contained in the plaintiff's petition was fully presented to the court and jury in said cause, and determined therein; and that the same was *res judicata.*

Rosa Blackwell answered by a general denial, averring that she was the real owner of the land described in the petition, and that the money used to buy the land was her money. The plaintiff having presented his testimony at the trial, the defendant demurred thereto because it did not prove facts sufficient to entitle the plaintiff to the relief prayed for in his petition. The demurrer was sustained, and the cause dismissed, upon

which ruling, and the exception thereto, the cause is brought here.

·Opinion of the court by

McATEE, J.: The evidence in the cause showed that, at the time of the execution of the contract, A. J. Black-well borrowed $5,000 from the First National Bank, at Coffeyville, Kan.; that plaintiff in error endorsed his note therefor, and that cattle were purchased with the whole of the proceeds of this loan, and a mortgage upon the cattle given to the bank for its security. The note was dated November 27, 1890, and was payable ten months after date. It remained unpaid after maturity, and the cattle were taken possession of by the bank, with the approval of Blackwell, who aided in their collection and sale, and the proceeds were applied as credits upon the note; $3,128.18 being paid November 11, 1891, $620 on June 23, 1892, and $200 on November 16, 1892; making a total of $3,948 18. These were all of the cattle which could be found, except from one to four head (it does not distinctly appear, from the evidence, which,) the pro-ceeds of which were received by A. J. Blackwell. The venture in the cattle was a complete failure. There were no profits, but a loss, which, including principal and interest, amounted to $1,113.76, which was paid by Ferguson. And this sum, together with other sums due from Blackwell to Ferguson, was included in the suit brought in the district court of Kay county by the plain-tiff, Ferguson, against the defendant, Blackwell, and in which the jury found a verdict in favor of the plaintiff, Ferguson, and against the defendant, Blackwell, in the sum of $2,777.50, for which judgment was rendered, and which is not now due to the plaintiff.

It is conceded that the contract provided that in the investment of the loan of $5,000, for which Ferguson furnished his aid by endorsement, Ferguson should have one-half of all the profits made "from the handling of the cattle, or in any other business" that Blackwell might engage in. There were, however, no profits in the business, but a decided loss, which was borne by Blackwell alone, and for which the bank has been paid, and Ferguson recouped and saved harmless. It also appears that all of the amounts formerly paid, prior to the execution of the contract by Ferguson for Blackwell, and which were due from the latter to the former at the time of the rendition of the judgment of $2,777.50, were included in this judgment; and it is therefore manifest that not only the loan of January 6, 1891, which furnished the special occasion for the contract, has been paid, but that the "other considerations" set forth in the contract have also been discharged and paid, and that Ferguson having secured payment to himself fully for the losses formerly made by him, or by reason of his, personal credit to Blackwell, and they having now been fully discharged, an interpretation of the contract is now sought for by Ferguson from this court whereby the contract of January 6, 1891, shall be so construed that he may demand and receive from Blackwell one-half of all profits made, not only from the handling of cattle, but from any other business which he (Blackwell) may hereafter "engage in."

Since the execution of the contract, and the venture in the cattle business,—unfortunately for Blackwell, and for which Ferguson has suffered no loss,—the Cherokee Strip has been opened for settlement, September 16, 1893, and Blackwell has abandoned his residence at

Chelsea, I. T., where he was possessed of some personal property, and possessory rights in several hundred acres of real estate, held under such terms and occupancy as are conceded by the Cherokee Nation to white settlers there, and has settled at Blackwell, in Kay county, and there acquired a large and profitable interest in real estate; and the court is now asked to interpret this contract to apply to these interests, and to declare that one-half of all these later acquisitions of Blackwell belonged to Ferguson, and to make that declaration under the doctrine of specific performance.

There is no such description in the contract of "landed interests" belonging to Blackwell for which this court could enter a decree for specific performance. The rule is that a contract for the conveyance of lands, which a court of equity will specifically enforce, must be certain in its terms, and that certainty required has reference to both the description of the property and the estate to be conveyed; and, accordingly, wherever the property cannot be identified, as the property described in the contract, specific performance will be denied. (*Preston v. Preston*, 95 U. S. 200.)

It is said that, where a sufficient description is given in the contract, parol evidence may be resorted to in order to fit the description to the thing, but where an insufficient description is given, or where there is no description, such evidence is inadmissible, but that the court will never receive parol evidence both to describe the land, and then apply the description. (*Baldwin v. Kerlin*, 46 Ind. 426; *Ferguson v. Staver*, 33 Pa. St. 411.)

And, if a decree for the specific performance of a contract relating to real estate is to possess any value, the

contract must describe the land involved with such accuracy and clearness that it can be identified, its quantity known, and its boundaries determined, beyond the possibility of future controversy. (*Ferris v. Irving,* 28 Cal. 645; *Day v. Griffith,* 15 Iowa, 104; *Jordan v. Deaton,* 23 Ark. 704; *Shelton v. Church's Adm'rs,* 10 Mo 774; *Wiegert v. Franck,* 56 Mich. 200, 22 N. W. 303; 22 Am. & Eng. Enc. Law, 963-968.)

Specific performance of a contract for the sale of lands will not be enforced unless the parties have described and identified the particular tract, or the contract furnishes the means of identifying with certainty the land to be conveyed. (*Tedford v. Trimble,* 87 Mo. 226; *Ferris v. Irving,* 28 Cal. 645.)

The doctrine is thus stated in order that the position of the court may be made clear upon the contention of the plaintiff in error as broadly as it is asserted. But when the contract pleaded upon and sought to be enforced is dated at Vinita, I. T., and provides for a bill of sale "upon all my land and interest in the Territory," it is manifest that the Indian Territory is meant, and, whatever the effect of this contract might have been in the Indian Territory, that it is not applicable to any landed interests in Oklahoma Territory. We think that the same application should be given to that provision of the contract which states that the bill of sale is to apply to one-half of all profits made from the "handling of cattle, or any other business that I may engage in," that it should be restricted in its terms to such operations as Blackwell might have engaged in in the Indian Territory, and that its purpose must have been understood at the time of its execution by both parties to

apply only to such profits as should be made at the time of the handling of the cattle, or any other business which Blackwell should engage in by the use of $5,000 borrowed from the bank at Coffeyville.

The removal of Blackwell from the Indian Territory to Oklahoma years subsequently, and his acquisition of property in this Territory, could not have been in contemplation at the time of the execution of the agreement. The venture with the $5,000 thus borrowed by the aid of Ferguson having been unfortunate, and Blackwell having suffered a loss of over $1,100 thereby, and Ferguson having been entirely recouped and saved from loss in that transaction, and having been paid for the "other considerations" stated in the contract, this court will not aid the plaintiff in error in stretching the terms of the agreement, and in giving to it an interpretation which would make it applicable to all profits which Blackwell has since its execution, or may henceforth engage in, as long as he may live—an interpretation which would be hard, unfair, and unconscionable in the extreme—and equity will refuse such relief. (22 Am. & Eng. Enc. Law, 1029.)

Even if it could be held that the contract relied upon here related to all profits made by Blackwell outside of the Indian Territory as well as within it, and outside of the loan of $5,000 and with other capital, and notwithstanding the losses sustained and incurred by him alone in the transaction, and if the contract should be susceptible to the construction sought to be placed upon it by the plaintiff in error (that is, that it applied to all the profits which Bleckwell might make after the execution of the note for $5,000 and other considerations,

—32

which had all been discharged by Blackwell) the contract is so manifestly overbalanced in favor of the plaintiff in error, and so unfair, that it will not receive the aid of a court of equity to carry it out.

It was said by Chief Justice Marshall in *Cathcart v. Robinson*, 5 Pet. 264 (the whole court agreeing with him) that: "The difference between that degree of unfairness which will induce a court of equity to interfere actively by setting aside a contract, and that which will induce a court to withhold its aid, is well settled. It is said that the plaintiff must come into court with clean hands, and that a defendant may resist a bill for specific performance by showing that under the circumstances the plaintiff is not entitled to the relief he asks. If the contract is unconscientious or unreasonable, or there has been an unfairness, the court will refuse its aid,"—and that: "If to any unfairness a great inequality between the price and value be added, a court of chancery will not afford its aid." These remarks are applicable to the circumstances of this case, and to the relief sought here. The judgment of the court below is affirmed.

Hainer, J., having presided in the court below, not sitting; all of the other Justices concurring.