STATEMENT OF FACTS.
This is an action for specific performance of an alleged agreement to convey real estate, brought in the district court of Oklahoma county, Oklahoma, by Oscar D. Halsell, Oscar G. Lee, Leonidas L. Land, Daniel P. Wright and Jean *Page 676 
H. Everest, plaintiffs, against William C. Renfrow and R. J. Edwards, defendants. The material averments of the petition are substantially as follows: That on and prior to February 14, 1901, W. C. Renfrow the defendant, was the owner of a tract of land in Oklahoma county, Oklahoma, described as follows: A part of the north half of the northwest quarter (1-4) of section four (4), in township eleven (11) north, range three (3) west of the Indian Meridian, more particularly described as follows: Beginning at a point where the middle alley between Noble and Chickasaw streets in South Oklahoma Addition to Oklahoma City intersects the east line of said quarter section, running thence west on a line parallel with the north line of said quarter section to the west line thereof; thence north along said west line five hundred and eighteen (518) feet to the southwest corner of the parcel deeded to Francis Ketch; thence north on a line paralled with said north line twelve hundred and twenty-two and forty-three hundredths (1222.43) feet to the southeast corner of the land deeded to Francis Ketch; thence north on a line parallel with the west line of said land three hundred and ninety-two (392) feet to the north line thereof; thence east along the north line of said land to a point five hundred and eighty (580) feet west to the northeast corner of said land; thence south on a line parallel with the east line of said land three hundred (300) feet; thence east on a line parallel with the north line of said land one hundred and eighty (180) feet, thence south on a line parallel with the east line of said land three hundred and eighty (380) feet to the southwest corner of the Washington public school grounds on said land; thence east to the east line of said land; thence along said east line to *Page 677 
the place of beginning. That George J. Shields was a real estate dealer at Oklahoma City and was duly authorized by Renfrow to sell said lands to such purchaser as he might be able to obtain for the price of ten thousand dollars. That these plaintiffs offered Shields ten thousand dollars for said land. That Shields accepted said offer for Renfrow and plaintiffs paid him on the purchase price thereof, the sum of $500.00 which Shields received and accepted as the agent of Renfrow. That Shields the same day wired Renfrow at Joplin, Missouri that he had sold the land for five (?) thousand dollars. That in answer to said telegram Renfrow by wire ratified and confirmed said sale. That in pursuance of said agreement Renfrow made, subscribed and acknowledged a deed, describing said land, and reciting a consideration of ten thousand dollars, and brought said deed to Oklahoma City for the purpose of consummating said sale. That at the time of making said agreement of sale, the parties in good faith believed that Renfrow was the owner of forty acres of land as described, but on investigation, it was discovered that Renfrow's vendor had conveyed a small portion of said land to another person, and it was mutually agreed to deduct $200 from the purchase price as consideration for said deduction in land, and Renfrow agreed to execute another deed, correctly describing said land and omitting said portion previously sold. That Renfrow prepared a new deed, conforming to the corrected description, and after signing and acknowledging same, deposited the same with the Western National Bank with directions to deliver the same to plaintiffs on the payment of the balance of the purchase money. That plaintiffs thereafter tendered to the bank the balance due as purchase price of said land and demanded *Page 678 
the deed, but that the bank refused to deliver said deed for the reason that Renfrow had directed them to demand a greater sum than was due.
That R. J. Edwards, with full notice and knowledge of plaintiff's rights and their claim to said land, entered into a fraudulent arrangement by which Renfrow conveyed said land to him.
That the defendants refuse to convey said land to plaintiffs, although they are ready and willing and able to pay the whole of the purchase price of said land, and now offer to do so. That after the purchase of said land and with the knowledge and consent of said Renfrow and before the conveyance to Edwards, the plaintiffs went into actual possession of said land, and thereupon discovered that one Springmeyer was in actual possession of a portion of said land under a lease which would not expire for many months, and said Renfrow refused and neglected to surrender to them full possession, but consented to such occupancy as they might enjoy in connection with said tenant. That they, with the consent of Renfrow, went upon said land and tore down fences and destroyed improvements found on the land. That the five hundred dollars paid to Shields on said purchase price is retained by Renfrow.
Wherefore plaintiffs pray for a decree of specific performance, that the deed to Edwards be cancelled, and that if there are any incumbrances on the land that proper deductions be made in the purchase price and judgment rendered accordingly.
This suit was commenced March 8, 1901.
The defendant Edwards answered first by general denial, and admitted that he had purchased the land in question from *Page 679 
Renfrow and paid him therefor the sum of ten thousand dollars. That he went into possession on the 9th day of March, 1901, and had been in undisputed and sole possession ever since said date, and until January, 1902, when the plaintiffs undertook to unlawfully and wrongfully take possession of said land and began the erection of a building thereon.
The defendant Renfrow for his separate answer denied that he had ever made a contract of sale of said land to plaintiffs; that Shields was authorized to sell said land or make any contract of sale, and admitted that he had been the owner of said land, and that on March 2, 1901, he sold and conveyed said land by warranty deed to his co-defendant, R. J. Edwards.
The answers of both Edwards and Renfrow were verified by affidavit. The plaintiff replied by general denial.
The cause was tried to the court and finding and judgment for the defendants.
Upon the trial the evidence introduced fairly and reasonably supports these conclusions: That about the first of February, 1901, the defendant, W. C. Renfrow, was the owner of the real estate in controversy; that he had recently purchased it and placed it in the hands of Shields, a real estate agent at Oklahoma City, for sale. The authority of Shields as agent was not in writing, and he had no authority to make a contract of sale. The price placed upon the property by Renfrow was $10,000. Renfrow lived at Joplin, Missouri, and the land was in Oklahoma City, where the plaintiffs all resided. Shields offered the property to the plaintiffs and they agreed to take it at the price of ten thousand dollars, and they paid Shields five hundred dollars upon the *Page 680 
agreement to purchase, which sum he still retains. Shields notified Renfrow by wire as follows: "Oklahoma City, O. T., Feb. 14, 1901. W. C. Renfrow, Joplin, Mo. Have sold the forty acres ten thousand cash, five hundred forfeit, Answer. George J. Shields." To this Renfrow sent the following answer: "Joplin, Mo., February 14, 1901. George J. Shields, Oklahoma City, O. T.. I confirm sale by you ten thousand cash, five hundred forfeit. W. C. Renfrow." Following this telegram, Mr. Renfrow went to Oklahoma City and there met the plaintiffs, and all the subsequent negotiations were carried on personally and orally. It was discovered that a prior owner of the tract in controversy had conveyed a lot 50 by 100 feet to C. A. Compton, and also made a lease upon the entire tract to one Springstine, who was in actual possession and refused to surrender. It developed that Renfrow could not deliver possession to the purchasers, and considerable time was spent in trying to agree upon terms for final completion of the sale. Renfrow proposed to deliver the plaintiffs the deed for all except the Compton lot, for which he would make a deduction of two hundred dollars in the purchase price, and to give such possession as he had, and to give full possession as soon as he could obtain it, or that he would pay the expense of an action to procure possession from Springstine, and employed an attorney for that purpose. The plaintiffs agreed to the $200 deduction for the Compton lot, but refused to take the deed or pay the purchase money unless Renfrow would give possession at once and get Springstine to vacate within thirty days, as they desired to plat the land and put it on sale at once. Before Renfrow arrived in Oklahoma City some of the plaintiffs had gone on the land with a surveyor and *Page 681 
were staking it off into lots and blocks and were tearing down fencing and removing posts. This work was stopped by the tenant Springstine, and the plaintiffs made no further effort to assert possession until the expiration of the lease, and long after this suit had been brought. Renfrow then went back to Joplin, and on February 25, sent to the Western National Bank at Oklahoma City a deed properly executed, conveying said land to Oscar D. Halsell, except the Compton lot and the Frisco railroad right of way, which were excepted, and directed the bank to deliver the deed on payment of $9,500. On the same day Renfrow wrote Mr. Halsell as follows:
"Joplin, Mo., Feb. 25, 1901.
"Mr. Oscar D. Halsell,
"Oklahoma City, O. T.
"My dear sir:
"I have this day mailed to the Western National Bank the deed to the Cunningham tract, and have instructed them to turn same over to you upon your depositing $9,500 to my credit, and $500 to the credit of Geo. J. Shields, and I shall expect this to be done between banking hours on Wednesday, the 27th inst., as Mr. Everest notified me on Saturday night that he would expect me to perfect title within thirty days, and was kind enough to extend me that length of time (only I presume.)
"I have concluded that I will bring this matter to a close at once and shall give you the opportunity of taking up the deed on Wednesday, or will consider the proposition at an end.
"Most respectfully,
"W. C. RENFROW.
"P. S. I write Mr. Shields to-day and instruct him fully in the matter." *Page 682 
Mr. Halsell also made the following tender in writing to the bank:
"Oklahoma City, O. T., 2-27-1901.
"I hereby tender F. R. Holt cash $9,300 together with $500 now in the hands of Geo. J. Shields, agt. of W. C. Renfrow, as payment in full according to agreement with said Renfrow for tract of land known as Cunningham tract of land, and possession thereof, deed of which is now in hands of F. R. Holt, cashier.
"O. D. HALSELL.
"Witness.
"L. L. LAND. "O. G. LEE.
"The above $9,300 tendered and refused by F. R. Holt, Cashier, 2-27-1901."
On the same day Mr. Halsell wrote Mr. Renfrow as follows:
"Oklahoma City, O. T., 2-27-1901.
"Mr. W. C. Renfrow,
"Joplin, Mo.
"Dear Sir: I am in receipt of your letter of Feb. 25th, in which you call my attention to the fact that you have sent deed for Cunningham tract of land to Western National Bank, and that upon payment of $9,500.00 placed to your credit and $500.00 placed to the credit of Geo. J. Shields, same will be delivered to me. Will say, that I to-day tendered to Mr. R. F. Holt, Cashier of the Western National Bank, $9,300 in cash, together with $500.00 held by Geo. J. Shields, your agent, and the $200.00 you agreed to allow for land sold off of said tract, would make $10,000 which you were to receive for the tract of land known as the Cunningham land.
"I requested Mr. Holt to deliver me deed and possession of land, in consideration of tender of this money, all of which he refused to do. We have certainly lived up to our *Page 683 
part of the contract and will just as surely expect you to do the same. You could not, under any circumstances, expect us to deliver you over the money for this land without giving us possession, neither would you buy a tract of land of me, or anyone else, with any cloud over the title. We stand ready to fulfill our part of the contract to the letter, without any variations, and I take it you are a business man and an honest man, and will certainly fulfill yours.
"Yours truly,
"O. D. HALSELL."
To this letter the following answer was sent:
"Joplin, Mo., March 1, 1901.
"Mr. Oscar D. Halsell,
"Oklahoma City, O. T.
"My Dear Sir:
"Your letter of the 27th just received, and I note what you say about tendering Mr. Holt, Cashier of the Western National Bank of your city, $9,300 in cash and $500 held by Mr. Geo. J. Shields, my agent, and that you requested Mr. Holt to deliver you the deed and possession of what is known as the Cunningham tract.
"Now, Mr. Halsell, possession is what caused me so much disappointment and prevented me from closing the deal with you the day after my arrival in Oklahoma City, and the question of possession and how to obtain it was gone over and fully discussed in your presence and the presence of your associates by my attorney, Mr. Shartel, at his office, who expressed doubt at the time about getting possession at a very early date, provided the lessee should give an appeal bond. After going over the matter as I supposed satisfactory to all, I tendered you my deed with such possession as I could give at the time, and which was not satisfactory to you and associates, and it was finally agreed to leave the matter with Mr. Everest to decide, and who came down to see me at the Lee Hotel that evening, and in endeavoring to get at a satisfactory understanding of *Page 684 
the matter, he informed me that he had decided to give me thirty days to perfect my title. I remarked, 'Suppose that I cannot perfect my title in thirty days, then what?' His reply was, 'That it would be a question of damages to be determined later.' I was not pleased with his demands, especially as I had no desire to throw the trade, so by the time I had reached Joplin the following day, I had made up my mind to give you the second opportunity of taking the property with such title and possession as I got when I became purchaser of same, and if not satisfactory to you I would call the trade off, all of which I have done.
"Yesterday I had the same offer as made by Mr. Shields for you, except that the party agreed to take chances in obtaining possession himself. I wired that I would accept his proposition, and in case he makes satisfactory arrangements with me this week I shall close the deal with him.
"I regret that I found matters in such a shape on my arrival there which prevented me giving you immediate possession of the property, as it was my intention and desire to do, and I wish you could have felt safe in accepting the deed with chances of possession later on, as I agreed to bear all expenses of a suit for possession. I could only offer you such title as I had, and I gave you the opportunity of taking that, and which you would have been as safe in accepting as any one else.
"As to the $200 referred to I would have arranged that by taking a quit claim deed back from you and paying you $200 as a consideration, with the hope that Mr. Cunningham would reimburse me to that extent, and which I believe he would have done.
"I especially note what you say about your being ready to fulfill your part of the contract to the 'letter,' and without 'variations,' and as an honest man and a business man expected me to do the same. No one can know better than yourself how easily a person can unexpectedly be placed in a position where it is impossible for him to carry out *Page 685 
a contract to the 'letter,' and without 'variations.' You have doubtless made many sales to your customers to deliver goods at a certain price, and because of some unforeseen rise in the price or other causes you refused to fill or ship the order. You well know that it was impossible for me to put you in possession, and my failure to do so was no greater disappointment to you than myself, and I regret exceedingly the termination of this matter.
"Most respectfully,
"W. C. RENFROW."
This concluded the negotiations, and, a few days later, Renfrow conveyed the land to Edwards, who paid him ten thousand dollars, and paid the tenant five hundred dollars to obtain possession.
The district court rendered judgment for the defendants, and the plaintiffs after motion for new trial, bring the cause here for review.
Opinion of the court by
Two questions are presented for our consideration: First, Do the telegrams, letters and other writings in evidence constitute such note or memorandum of an agreement to sell real estate as will satisfy the statute of frauds, of which a court will decree a specific performance? Second, Does the evidence show such a part performance of a parol contract for the sale of real estate as will authorize a court to decree specific performance?
While the arguments of counsel for plaintiffs in error are able, ingenious, skilled, and deserving of compliment, in our opinion the case does not present a problem of difficult solution. We have examined all the authorities cited by counsel in support of their several contentions, and concur *Page 686 
in the propositions contained in these cases, but the facts proven do not in our judgment support the conclusions upon which these contentions are based. It cannot under the facts proven, be reasonably contended that Shields, as Renfrow's agent, had any authority to sell this land. Renfrow had placed this land with him for sale; this was an oral direction. No writing of any character had passed between Renfrow and Shields. This direction only authorized him to find a purchaser, and submit the propositions. An agreement for the sale of real property made by an agent is invalid, unless the authority of the agent is in writing, subscribed by the party sought to be charged, sec. 780, Wilson's Statutes.
It is a well established proposition of general application, that a complete contract binding under the statute of frauds may be gathered from letters, writings and telegrams between the parties, relating to the subject-matter of the contract, and so connected with each other that they may be fairly said to constitute one paper relating to the contract. (Beckwith v.Talbot, 95 U.S. 289 Ryan v. U.S., 136 U.S. 68; Bibb v. Allen,149 U.S. 481.) But the facts proven do not come within the rule. In order to be sufficient, the letters, telegrams, and writings relied upon must, by reference to each other, disclose every material part of a valid contract, and must be signed by the party sought to be charged. They must set out the parties, the subject-matter, the price, the description, terms and conditions, and leave nothing to rest in parol. (Fox v. Easter,10 Okla. 527; Gould v. Stormant, 51 Mich. 636; Eggleston v.Waggoner, 46 Mich. 610; Ferguson v. Blackwell, 8 Okla. 489.)
It is a general rule that parol evidence cannot be permitted to supply an omission of any essential element of *Page 687 
the contract. In Ferguson v. Blackwell et ux., 8 Okla. 489, this court held: That "Where a sufficient description is given in the contract, parol evidence may be resorted to in order to fit the description to the thing, but where an insufficient description is given or where there is no description, such evidence is inadmissible because the court will never receive parol evidence both to describe the land, and then to apply the description." And we adhere to this doctrine as the safe and sound rule. In explanation, but not as a modification of this rule, it is said in Ryan v. U.S., 136 U.S. 68; "It is not essential that the description have such particulars and tokens of identification as to render a resort to extrinsic aid entirely needless, when the writing comes to be applied to the subject-matter. The terms may be abstract and of a general nature, but they must be sufficient to fix and comprehend the property which is the subject of the transaction, so that with the assistance of external evidence, the description without being contradicted or added to, can be connected with and applied to the very property intended, and to the exclusion of all other property."
Applying these tests, it is clear that there was no such written memoranda as the law recognizes as sufficient to supply the place of a written agreement. The first writing of any character appearing in the case is a check from Land, one of the plaintiffs, to Shields for five hundred dollars. There is no means of identifying this check, or its purposes, except by parol evidence. It does not disclose anything that will supply any element of an agreement to sell the real estate in question. The next writing is the telegram from Shields to Renfrow, which states that he *Page 688 
has "sold the fifty acres, ten thousand cash, five hundred forfeit." This telegram is from the agent to his principal, it is not a communication between the parties to the transaction. Shields was not the agent of the plaintiff, nor acting for them, he was agent for Renfrow, and communications between the agent and his principal do not ordinarily constitute a part of the agreement itself, but are explanatory of what has been done between the agent and the other party. But in this telegram, Shields says he has sold the property, and as heretofore held, he had no authority to sell, and any sale he made cannot be enforced. The next writing is the telegram from Renfrow to Shields: "I confirm sale by you ten thousand cash, five hundred forfeit." So far no vendees have been mentioned and no description of the property given. In order to supply these, it is the theory of counsel for plaintiffs in error that the deed executed by Renfrow and wife, and submitted by Renfrow to the plaintiffs at the time of the conference in Oklahoma City, contained the names of the vendees and the description of the land, and, although not delivered, that it is a writing that may be looked to to supply the description and vendees. While there are a very few cases holding that an undelivered deed may be looked to to supply a description, they are cases where there had been an exchange of lands, and one or both parties had taken possession. (Parrill v. McKinley, 58 Am. Dec. 1;Leonard v. Woodruff, 65 P. 199.) But the general rule is that an undelivered deed forms no part of the transaction, and cannot be looked to to supply any omissions in the writings that have passed. (Steele v. Fife, 48 Iowa, 99; Grant v. Leran,
4 Penn. St. 393; Weir v. Batdorf, 38 N.M. 22; Day v. LaCasse,
27 Atl. *Page 689 
[Me.] 124; Parker v. Parker, 67 Mass. 409; Comer v. Baldwin,16 Minn. 172; Johnson v. Brook, 66 Am. Dec. 547; Allebach v.Godshalk, 116 Pa. St.) But in view of the particular facts in this case we do not deem it important whether this deed could or could not aid the agreement. It is a conceded fact that the description in this deed was not a correct one, and both parties repudiated it. It embraced the Compton lot which Renfrow did not own, and he refused to deliver the deed with this lot embraced in the description, and it was orally agreed that a new deed should be drawn up, excluding the Compton lot from the description. The further contention is made that the deed sent to the bank by Renfrow contained a correct description, and that it can be looked to to supply the description. If this could be permitted under the authorities cited, supra, it would not yet entitle the plaintiffs to recover in this action. If the writings alone are to be held as a sufficient memoranda to take the agreement out of the statute of frauds, and we do not think they do, then it would appear from such agreement that the consideration to be paid was ten thousand dollars, and the plaintiffs never tendered or offered to pay but $9,800.00. It is true that it is claimed that Renfrow agreed to deduct $200.00 on account of the Compton lot being deducted from the land, but this was a parol agreement, and "A contract in writing may be altered by a contract in writing, or by an executed oral agreement and not otherwise." Sec. 829, Wilson's Stat. 1903, Swain v. Seamens, 76 U.S. 254. This alteration was not in writing, neither was it executed, for at that time nothing in the nature of a consideration had passed between the parties, except the five hundred dollars paid to Shields, and this had *Page 690 
not yet been accepted by Renfrow and was held subject to the final determination of the negotiations.
The subsequent letters of Renfrow to Halsell, and of Halsell to Renfrow, and of Renfrow to Stone and Lee, contain nothing that can be construed as any part of an agreement. They are competent evidence as containing admissions of one of the parties to the negotiations and go no further than this.
We deem it clear that no such written memoranda or notes passed between Renfrow and the plaintiffs as can, by the most liberal application of the well established rules of law, be construed into a written contract. There is not an instrument, letter, memorandum or telegram signed by any of the plaintiffs and sent to Renfrow that has any reference whatever to the terms or provisions of an agreement, until the letter of Halsell declining the deed unless Renfrow would give possession at once and deduct two hundred dollars from the price as offered Shields.
The second proposition is, Was there a parol agreement entered into between the parties, or part parol and part written, certain of enforcement in its terms, and which has been in such part performed as will warrant a court in requiring specific performance of the remaining portion? Upon this question the burden of proof was upon the plaintiffs to show an oral agreement, and such part performance as would make it fraudulent and inequitable to allow the defendant to make use of the statute of frauds as a defense. The evidence fails to establish a contract; upon the contrary it is clearly apparent that the question of delivering possession of the tract was one that the minds of the parties never did meet upon. The tenant, Springstine, was *Page 691 
in actual possession. He demanded five hundred dollars for his interest. Renfrow refused to pay him anything, and offered his deed and such possession as he could deliver, subject to any rights the tenant then had, and offered to pay the expenses of waging a suit to oust the tenant. The plaintiffs refused to take the property except upon the condition of immediate possession, and demanded that Renfrow should purchase whatever interest Springstine had under his lease, and give them undisputed possession. Springstine and his attorney were brought into the conference and an effort made to secure an agreement to settle his rights by arbitration. This effort failed and the tenant persisted in his demands for five hundred dollars or he would retain possession as against every one until his lease should expire in December, 1901. The parties separated and went to their several homes without ever reaching an agreement. Renfrow then sent the deed to the bank and tendered the same, upon the conditions in his letter to Halsell. The plaintiffs declined his terms and tendered the money less the deduction for the Compton lot, only upon condition of immediate possession, which they knew Renfrow could not give unless he acceded to the demands of Springstine, which he had previously informed them he would not do. There was no parol agreement ever reached by the parties. The writings do not constitute a contract in writing, nor do the oral negotiations and partial writings constitute a parol agreement. It therefore follows, if there was no agreement to sell and convey, there could be no part performance which would avail the plaintiffs. Part performance of an agreement presupposes an agreement certain in its essential parts. But should we concede that the parties did enter into a *Page 692 
parol agreement which but for the statute of frauds might be enforced, we are of the opinion that the evidence does not show such partial performance on the part of the plaintiffs as will require a court of equity to enforce specific performance. It is true the plaintiffs paid Shields five hundred dollars with the purpose that it should be applied as a payment to Renfrow upon the purchase price of the land, but the mere payment of the consideration in money is insufficient to remove the bar of the statute. But payment of the purchase money accompanied by an entry into possession in good faith under the contract, with the consent of the vendor and making valuable improvements on the land, is such a part performance as will support an action for specific performance. Townsend v. Vanderwerker,160 U.S. 171; Neale v. Neales, 9 Wall. 1; Brown v. Sutton, 129 U.S. 238.
Mr. Justice Brown in the case of Townsend v. Vanderwerker,supra, stated the rule thus: "The general principle to be extracted from the authorities is that if the plaintiff, with the knowledge and consent of the promisor, does acts pursuant to and in obvious reliance upon a verbal agreement, which so change the relations of the parties as to render a restoration of their former condition impracticable, it is a virtual fraud upon the part of the promisor to set up the statute in defense, and thus to receive himself the benefit of the acts done by the plaintiff, while the latter is left to the chance of a suit at law for the reimbursement of his outlays, or to an action upon a quantum meruit for the value of his services. In discussing what are and what are not acts done in part performance, which will entitle the plaintiff to a decree in his favor, the entry into possession *Page 693 
of the land and the making of valuable improvements thereon is treated by all the cases as one of the most satisfactory evidences of part performance, and entitling the plaintiff to a decree in his favor. "And this principle is exemplified in the following cases: Union Pacific Railway Company v. McAlpine,129 U.S. 305; Ryan v. Dix, 34 N.Y. 307; Loury v. Ton, 3 Barb. Chan. 407; Overstreet v. Rice, 96 Am. Dec. 279.
It is the general rule that the taking possession under a parol contract and making valuable improvements on the land will constitute such part performance as will enable the vendee to enforce specific performance, but it is also well settled that such acts of possession and the purpose of them must have been known to the vendor.
We do not think the manner and time of taking possession by the plaintiffs in this case, and the character of the work done on the land was done with the consent of Mr. Renfrow. It is true that Shields may have given them permission to make a survey and plat the land, but there is no proof that Shields had any authority over the land, and there is no presumption that a real estate broker having lands listed for sale, has any control over the lands, or the right to make a contract of sale. His authority to sell must be in writing, and one dealing with him must demand the written authority or deal at his own risk.
The plaintiffs rely upon the provisions of section 760 Wilson's Stat. 1903, which reads thus: "A voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it so far as the facts are known, or ought to be known to the person accepting." And it is argued that inasmuch as Shields accepted *Page 694 
the check for five hundred dollars and collected the money thereon, that such act constitutes a voluntary acceptance of the benefits of a transaction that carries with it Renfrows' consent to all the obligations arising from its acceptance. This rule limits the imposed consent to the facts known at the time or such as ought to be to the person accepting. The check was given to Shields as a payment upon an agreement to sell made by him without authority, and which could not be enforced and which was in fact never fully ratified by either the plaintiffs or defendants. Shields was not the agent of Renfrow to collect the purchase money or make a conveyance; his authority to find a purchaser carried with it no implied authority to collect the purchase money when the land was sold. The plaintiffs by giving a check payable to Shields personally made him their agent to deliver the money to Renfrow, and Renfrow never has received or accepted the money. If the check had been made payable to Renfrow, and he had endorsed it and collected the proceeds, a different rule would apply. We cannot hold under all the circumstances that Renfrow has ever in fact or in contemplation of law accepted anything from the plaintiffs, and hence he is not concluded from asserting his defense.
It seems clear that there was no error committed by the trial court, and that the judgment is clearly right upon the facts and the law. The judgment of the district court of Oklahoma county is affirmed at the costs of the plaintiffs in error.
Irwin, J., who presided in the court below, and Burwell, J., not sitting; all the other Justices concurring.
 *Page 1